# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Burris v. Department of Children & Family Services*, 2011 IL App (1st) 101364

| | |
|---|---|
| Appellate Court Caption | LORI BURRIS, Plaintiff-Appellee, v. THE DEPARTMENT OF CHILDREN AND FAMILY SERVICES and ERWIN McEWEN, Director, Defendants-Appellants. |
| District & No. | First District, Third Division<br>Docket No. 1–10–1364 |
| Filed | June 29, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiff's administrative appeal from the denial of her request to expunge the placement of her name on the central register under the Abused and Neglected Child Reporting Act pursuant to an indicated finding of neglect based on the placement of her child in an injurious environment should have been dismissed under section 7.16 of the Act and section 336.190(a)(3) of the rules of the Department of Children and Family Services, and therefore, the trial court's determination was reversed. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09–CH–32763; the Hon. Mary K. Rochford, Judge, presiding. |
| Judgment | Reversed. |

| Counsel on Appeal | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Jan E. Hughes, Assistant Attorney General, of counsel), for appellants. |
|---|---|
| | Legal Assistance Foundation of Metropolitan Chicago, of Chicago (Steven L. Pick and Richard T. Cozzola, of counsel), for appellee. |
| Panel | PRESIDING JUSTICE QUINN delivered the judgment of the court, with opinion. |
| | Justices Neville and Steele concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff filed a complaint for administrative review of the Director of Department of Children and Family Services' (DCFS) decision denying her request to expunge an indicated report of neglect based on an allegation that she placed her child, M.W., in an environment that was injurious to the child's health and welfare. Plaintiff argued, during the administrative proceedings and on review, that the Abused and Neglected Child Reporting Act's (Reporting Act) (325 ILCS 5/1 through 11.7 (West 2006)) definition for "neglected child" does not include the term "injurious environment." Therefore, plaintiff maintained that DCFS's administrative rule (89 Ill. Adm. Code 300 app. B (2010)) listing "substantial risk of physical injury/environment injurious to health and welfare" as an allegation of neglect was void and DCFS was not authorized to maintain reports of neglect on the central register based on an indicated finding of environment injurious to health and welfare.

¶ 2    In its decision, DCFS rejected plaintiff's argument and affirmed the indicated report, placing plaintiff's name on the central register pursuant to the Reporting Act. The Director found that DCFS's regulations, listing "environment injurious to health and welfare" as an allegation of neglect, was not inconsistent with the Reporting Act. The circuit court reversed the Director of DCFS's decision, finding that DCFS could not place plaintiff's name on the central register in this case where the Reporting Act did not contain "environment injurious" under its definition of a "neglected child" and the legislature had previously removed the phrase from the Reporting Act.

¶ 3    On appeal, DCFS contends that the circuit court erred in reversing its determination where DCFS's administrative rule, including "environment injurious" as an allegation of neglect, is a valid regulation and consistent with the Reporting Act. DCFS argues that the legislative history of the Reporting Act shows that the legislature removed the phrase "environment injurious" from the statute in 1980 because the phrase standing alone might create confusion, not because the legislature intended to preclude DCFS from including it as specific allegation of neglect in its regulations, enacted in 2001.

¶ 4    Following oral arguments in this case, this court issued an order on March 3, 2011, directing the parties to file supplemental briefs addressing: (1) the applicability of section 7.16 of the Reporting Act (325 ILCS 5/7.16 (West 2006)) and whether the administrative appellate process established by the Reporting Act is precluded, under section 336.190(a)(3) of DCFS's rules (89 Ill. Adm. Code 336.190(a)(3) (2010)), where a court has entered a finding of child abuse or neglect. DCFS argues that it would have been appropriate for the administrative hearing to be dismissed under section 7.16 of the Reporting Act and section 336.190(a)(3) of DCFS's rules, where this court's previous findings of child neglect involving M.W. under the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/1–1 *et seq.* (West 2006)) (*In re M.W.*, 386 Ill. App. 3d 186 (2008)) preclude plaintiff's right to a hearing to contest whether the same facts establish child neglect under the Reporting Act. Plaintiff maintains that she had a right to a hearing under the Reporting Act because, while this court made a finding of child neglect under the Juvenile Court Act, no court had made a judicial finding of neglect with respect to whether the definition of "neglected child" in the Reporting Act encompasses the category of subjecting a child to an environment injurious to the child's welfare.

¶ 5    For the following reasons, we reverse the circuit court's determination and find that plaintiff's administrative appeal requesting expungement of the report of child neglect should have been dismissed pursuant to section 7.16 of the Reporting Act (325 ILCS 5/7.16 (West 2006)) and section 336.190(a)(3) of DCFS's rules (89 Ill. Adm. Code 336.190(a)(3)).

¶ 6                                  I. BACKGROUND

¶ 7                         A. Juvenile Court Proceedings

¶ 8    Plaintiff is the mother of M.W., who was born in September 2007, and D.J. who was born in April 2004. M.W.'s involvement with DCFS arose from his half brother D.J.'s adjudication of abuse and neglect. See *In re D.J.*, No. 1–05–3815 (Apr. 21, 2006) (unpublished order under Supreme Court Rule 23).

¶ 9    In June 2005, a caller to the DCFS hotline reported scratches and bruises to D.J.'s body and that his toenails were discolored. A DCFS investigator visited D.J., who was living with plaintiff and her boyfriend, Shawn Patterson. During the visit, the DCFS investigator observed that D.J. had a healing scar on his forehead, discolored and infected toes, and slightly pink buttocks. Plaintiff and Patterson claimed that D.J. had a diaper rash and injured himself in a fall. Plaintiff agreed to take D.J. to the doctor the next day, but she failed to do so and the DCFS investigator's subsequent attempts to contact plaintiff were unsuccessful.

¶ 10   On July 25, 2005, plaintiff was living in a motel with Patterson and D.J. While plaintiff was at work, Patterson called the police to report that he had been robbed. When police arrived, they saw D.J. lying still on a bed and that his head was swollen. D.J. was hospitalized with injuries including: rectal trauma, an enlarged rectal opening, rectal tears, oral injuries, chin lacerations, skull fracture, forehead bruising, an adult-sized bite mark to his abdomen, multiple nonpatterned bruises to his abdomen, thigh lesions, gonorrhea of the mouth, a right palm lesion, and chronic toenail irritation or trauma. D.J. was diagnosed as

a battered child and a victim of child sex abuse, repetitive child physical abuse, medical neglect, and failure to protect from harm.

¶ 11 Patterson was arrested and charged with child endangerment, aggravated battery, and predatory criminal sexual assault. Patterson admitted to pinching D.J.'s thighs, burning his hand, and inserting a plunger into his rectum. Plaintiff told medical personnel that D.J. had fallen down the stairs and denied knowledge of the bite mark on his abdomen, scratches on his rectal and leg areas, and the laceration to his anus. Plaintiff admitted seeing Patterson pinch D.J.'s thighs and told him "not to do that."

¶ 12 Plaintiff met with a DCFS investigator on July 27, 2005, and told the investigator that Patterson began babysitting D.J. in the middle of May, that she knew Patterson smoked marijuana, that neighbors told her Patterson swore at D.J. and told him to shut up, and that she saw Patterson pinch D.J. between the legs. Plaintiff admitted that she failed to comply with the doctor's instruction to bring D.J. for a follow-up visit after he received treatment for his toes in June. Plaintiff admitted that she tried to protect Patterson by falsely telling the police that she did not know how D.J.'s thighs were injured and by falsely telling hospital staff that D.J. fell down the stairs in her presence. Plaintiff later told police that she saw Patterson pinch D.J.'s thighs in an effort to get him to stop crying and that sometimes she noticed bruises on D.J.'s legs, face and arms when she got home from work. Plaintiff also stated that she noticed more bruises on D.J.'s thighs and abdomen after July 4, 2005, and Patterson told her he bit D.J. to stop him from crying and show him "who was in charge."

¶ 13 After D.J. was discharged from the hospital in August 2005, he was placed in a residential medical facility and assessed for services. Plaintiff was referred for services, including individual therapy. In March or April 2007, plaintiff surrendered her parental rights to D.J. and all services were discontinued. At the time, plaintiff was pregnant with M.W.

¶ 14 Plaintiff met M.W.'s father, Darrion W., in June 2006, and he moved in with her in September 2006. After several months, Darrion W. began a relationship with another woman and moved out but resumed his relationship with plaintiff when she told him that she was five months pregnant. M.W. was born in September 2007, and four weeks later DCFS received an anonymous telephone call expressing concern for his safety due to the abuse D.J. sustained. M.W. was taken into protective custody in October 2007 and placed with a foster parent.

¶ 15 The State filed a petition for adjudication of wardship under the Juvenile Court Act (705 ILCS 405/1–1 *et seq.* (West 2006)), alleging that M.W. had been neglected due to an injurious environment and abused due to the fact that his parent or some other person in the household created a substantial risk of physical injury to him by nonaccidental means. At a hearing in October 2007, the parties stipulated that a DCFS investigator would testify that: plaintiff and Darrion W. resided together; that a previous parenting capacity assessment indicated that plaintiff was unable to accept any responsibility for her part in the circumstances that led to DCFS's involvement with D.J.; plaintiff failed to successfully complete recommended services including individual therapy; and that reasonable efforts could not prevent or eliminate the immediate and urgent necessity of removing M.W. from the home. The circuit court granted DCFS temporary custody of M.W.

¶ 16    At the adjudicatory hearing, the State submitted into evidence the adjudication order finding D.J. neglected and abused, the disposition order finding plaintiff unable and unfit to parent and protect him, and the order terminating her parental rights to D.J. The State also submitted a DCFS report for M.W., which stated that when the investigator went to the home in response to the September 2007 hotline call, M.W. appeared to be healthy and well cared for. The investigator reported that plaintiff stated that she stopped going to therapy when she surrendered her rights to D.J. and that she was pregnant with M.W. at that time. Plaintiff claimed that she stayed with Patterson, D.J.'s abuser, despite the signs of abuse because she did not have anywhere to go, but plaintiff acknowledged that Patterson was unemployed and did not support her financially. The investigator checked the criminal background of Darrion W., M.W.'s father, and found that he had six arrests between August 2005 and September 2007.

¶ 17    The State also submitted plaintiff's June 2006 parenting capacity assessment in connection with D.J. According to the assessment, plaintiff claimed that she was not in a relationship, but on two occasions different men answered plaintiff's cell phone when the caseworker called. Therapy reports indicated that plaintiff had neither taken responsibililty for her failure to protect D.J. nor shown genuine remorse for that failure. Plaintiff's dependent personality disorder diagnosis indicated that she would have difficulties becoming an independent, self-functioning person without a relationship with a man, and might repeat a pattern of selecting an abusive partner and prioritize that relationship above protecting her child. Accordingly, the psychologist who completed the assessment recommended that plaintiff continue weekly individual therapy and complete parenting classes.

¶ 18    Following the hearing, the circuit court found M.W. neglected due to an injurious environment, but that the State did not meet its burden concerning the allegation of abuse. The case then proceeded to a disposition hearing to determine whether it was in the best interests of M.W. to be made a ward of the court. The circuit court found plaintiff fit, able and willing to care for M.W., and returned M.W. to her care under an order of protective supervision.

¶ 19    This court stayed enforcement of the circuit court's dispositional order pending appeal. On appeal, this court affirmed the circuit court's finding of neglect where plaintiff's "history and psychological issues put M.W. in an environment that was injurious to his health and welfare." *In re M.W.*, 386 Ill. App. 3d 186, 198 (2008). This court reversed the circuit court's dispositional order where the evidence established that plaintiff was unable to safely care for and protect M.W. and that reunification was not in M.W.'s best interest. *In re M.W.*, 386 Ill. App. 3d at 199. This court explained that plaintiff had not made sufficient progress in therapy and counseling to address her psychiatric disorder. This court found that plaintiff's unresolved psychological issues and failure to protect her older son from severe physical and sexual abuse by her previous paramour raised concerns about her judgment in relationships and capacity to protect M.W. Accordingly, this court entered a disposition order placing M.W. in the guardianship and custody of DCFS.

¶ 20                           B. Proceedings Under the Reporting Act

-5-

¶ 21    While plaintiff was involved in proceedings in the juvenile court with respect to M.W., DCFS conducted an investigation and determined that plaintiff should be "indicated" for "substantial risk of physical injury/injurious environment" related to M.W.[1], pursuant to part 300, appendix B, of title 89 of the Illinois Administrative Code (89 Ill. Adm. Code 300 app. B). As a result of the indicated finding of child neglect, plaintiff's name was to be placed on the central register maintained by DCFS. 325 ILCS 5/7.7 (West 2006).

¶ 22    Plaintiff appealed the finding and requested that the indicated report against her for child neglect be expunged from the central register pursuant to section 7.16 of the Reporting Act (325 ILCS 5/7.16 (West 2006)). In May 2009, the parties agreed to submit the matter to a DCFS administrative law judge (ALJ) without an evidentiary hearing because they believed that the indicated finding of child neglect should be upheld or expunged on legal grounds only.

¶ 23    On May 8, 2009, DCFS filed a motion to dismiss plaintiff's expungement appeal pursuant to section 336.190(a)(3) of DCFS's rules (89 Ill. Adm. Code 336.190(a)(3)), which provides that the ALJ shall dismiss an appeal when "a court has made a judicial decision on the issue being appealed or a judicial finding of child abuse or neglect has been made on the issue and the appellant is requesting that the record of the report of child abuse or neglect be expunged, amended or removed." On May 13, 2009, DCFS filed an amended motion to dismiss plaintiff's appeal and attached a transcript of the adjudication hearing involving M.W. and this court's decision in *In re M.W.*, 386 Ill. App. 3d 186 (2008).

¶ 24    Plaintiff responded to the motion and filed a cross-motion arguing that the indicated finding of neglect should be expunged because unlike the Juvenile Court Act, the Reporting Act does not define "neglected child" as including "subjecting a child to an environment injurious to the child's welfare." Plaintiff noted that the legislature deleted this phrase from the definition of "neglect" in the Reporting Act in 1980. Therefore, plaintiff argued that any decision to place her name on the central register based on an environment injurious to a minor's welfare would be void and plaintiff asked that the indicated report against her be expunged.

¶ 25    The ALJ agreed with plaintiff and recommended that the indicated finding of neglect be expunged. The DCFS Director, defendant Erwin McEwen, disagreed with the ALJ and issued a final decision and denied plaintiff's request to expunge the neglect finding pertaining to M.W. from the central register. The DCFS Director found no inconsistency between the Reporting Act and the DCFS rule including "environment injurious to health and welfare" as an allegation of neglect.

¶ 26    Plaintiff filed a complaint for administrative review of DCFS's decision in the circuit court of Cook County. The circuit court reversed the Director's decision. The circuit court explained that the legislature removed "environment injurious" from the Reporting Act's definition of "neglected child" and, therefore, DCFS's decision to indicate plaintiff for

[1]An indicated report is any report of child abuse or neglect made to DCFS for which it is determined, after an investigation, that credible evidence of the alleged abuse or neglect exists. 325 ILCS 5/3 (West 2006).

neglect based on "environment injurious" was not statutorily authorized. Defendants now appeal.

¶ 27 On appeal, defendants argue that the circuit court erred in reversing the Director's decision because the DCFS regulation identifying "substantial risk of injury/environment injurious to health and welfare" as an allegation of neglect is a valid regulation and consistent with the Reporting Act.

¶ 28                                    II. ANALYSIS

¶ 29                               A. Standard of Review

¶ 30 In reviewing a final decision under the Administrative Review Law (735 ILCS 5/3–101 *et seq.* (West 2006)), we review the administrative agency's decision and not the trial court's determination. *Bolger v. Department of Children & Family Services*, 399 Ill. App. 3d 437, 448 (2010). An agency's decision on a question of law is not binding on a reviewing court and is reviewed *de novo*. *Bolger*, 399 Ill. App. 3d at 448. Interpretation of agency regulations is a question of law, which we review *de novo*. *Walk v. Department of Children & Family Services*, 399 Ill. App. 3d 1174, 1181 (2010). However, an agency's interpretation of its own rules and regulations " ' "enjoys a presumption of validity." ' " *Walk*, 399 Ill. App. 3d at 1181 (quoting *Montalbano v. Department of Children & Family Services*, 343 Ill. App. 3d 471, 479 (2003), quoting *Nolan v. Hillard*, 309 Ill. App. 3d 129, 143 (1999)).

¶ 31                      B. The Reporting Act and DCFS Regulations

¶ 32 Section 7.7 of the Reporting Act requires DCFS to maintain "a central register of all cases of suspected child abuse or neglect." 325 ILCS 5/7.7 (West 2006). Section 7.7 further provides: "Through the recording of initial, preliminary, and final reports, the central register is operated in such a manner as to enable the Department to: (1) immediately identify and locate prior reports of child abuse or neglect; (2) continuously monitor the current status of all reports of child abuse or neglect being provided services under this Act; and (3) regularly evaluate the effectiveness of existing laws and programs through the development and analysis of statistical and other information." 325 ILCS 5/7.7 (West 2006). Our supreme court has recognized that the state has a "significant interest in protecting the welfare of children, and the central register is one mechanism the state uses to protect children from abuse and neglect." *Lyon v. Department of Children & Family Services*, 209 Ill. 2d 264, 278 (2004).

¶ 33 Pursuant to the Reporting Act, as soon as it receives a report of alleged child abuse or neglect, DCFS's regional child protective service unit (service unit) must transmit a copy of it to the central register. 325 ILCS 5/7.10 (West 2006). Within 60 days after receiving the report, the service unit must determine whether the report is " 'indicated' " or " 'unfounded.' " 325 ILCS 5/7.12 (West 2006). A report is " 'indicated' " "if an investigation determines that credible evidence of the alleged abuse or neglect exists." 325 ILCS 5/3 (West 2006). A report is " 'unfounded' " if "it is determined after an investigation that no credible evidence of abuse or neglect exists." 325 ILCS 5/3 (West 2006). If it is impossible to begin or complete an investigation within 60 days, the service unit may deem the report

" 'undetermined.' " 325 ILCS 5/3 (West 2006). "Credible evidence" means that "the available facts, when viewed in light of the surrounding circumstances, would cause a reasonable person to believe that a child was abused or neglected." 89 Ill. Adm. Code 300.20 (2010).

¶ 34    Plaintiff in the present case appealed DCFS's indicated finding of child neglect and requested that the indicated report against her be expunged from the central register pursuant to section 7.16 of the Reporting Act (325 ILCS 5/7.16 (West 2006)). Plaintiff argues that the Reporting Act's definition of "neglect" did not permit DCFS to enter an indicated finding of child neglect based on an allegation that she placed M.W. in an environment that was injurious to M.W.'s health and welfare.

¶ 35    Pursuant to section 3 of the Reporting Act, a "neglected child" includes: "any child who is not receiving the proper or necessary nourishment or medically indicated treatment including food or care," or any child who "is not receiving the proper or necessary support or medical or other remedial care recognized under State law as necessary for a child's well-being, or other care necessary for his or her well-being, including adequate food, clothing and shelter." 325 ILCS 5/3 (West 2006). Section 3 provides that a child shall not be considered neglected: "for the sole reason that the child's parent or other person responsible for his or her welfare has left the child in the care of an adult relative for any period of time"; "for the sole reason that the child has been relinquished in accordance with the Abandoned Newborn Infant Protection Act"; "for the sole reason that such child's parent or other person responsible for his or her welfare depends upon spiritual means through prayer alone for the treatment or cure of disease or remedial care as provided under Section 4 of this Act"; and "solely because the child is not attending school in accordance with the requirements of Article 26 of The School Code, as amended." 325 ILCS 5/3 (West 2008). Section 3 also provides a definition for an "abused child," which was not an allegation in the present case involving M.W.

¶ 36    Based on these definitions, DCFS promulgated regulations describing "specific incidents of harm" which must be alleged in a report of child abuse or neglect. 89 Ill. Adm. Code 300 app. B. Pursuant to the regulations, "[t]he allegation definitions focus upon the harm or the risk of harm to the child. Many of the allegations of harm can be categorized as resulting from either abuse or neglect." 89 Ill. Adm. Code 300 app. B. Accordingly, the allegations of harm are coded, with all abuse allegations receiving a one or two-digit number under 30 and all neglect allegations receiving a two-digit number greater than 50. 89 Ill. Adm. Code 300 app. B.

¶ 37    The allegation at issue in the present case is entitled "Substantial Risk of Physical Injury/ Environment Injurious to Health and Welfare" and has the assigned code "10/60," meaning that the allegation of harm includes both categories of abuse ("10") and neglect ("60"). The neglect allegation of harm under allegation 60 is defined as: "[P]lacing a child in an environment that is injurious to the child's health and welfare *** (neglect)." 89 Ill. Adm. Code 300 app. B. Examples of incidents or circumstances to support allegation 60 include: "[s]ituations that place a child at substantial risk of harm due to environmental issues in the home"; "[d]omestic violence in the home when the child has been threatened and the threat is believable, as evidenced by a past history of violence or uncontrolled behavior"; "[t]he

-8-

circumstances surrounding the death of one child provides reason to believe that another child is at real and significant risk of harm"; "[a]nyone in the home exposes child to environment that significantly affects the health and safety based on use, sale or manufacturing of illegal drugs or alcohol"; "parent's or caregiver's mental illness and behavior poses a significant danger to the child's health and safety"; and "parent has been adjudicated unfit by a court and the parent has not completed services that would correct the conditions which led to the court finding." 89 Ill. Adm. Code 300 app. B.

¶ 38 Factors to be considered in determining if a real and significant danger exists are: "[t]he child's age; [t]he child's medical condition, behavioral, mental, or emotional problems, developmental disability, or physical handicap, particularly related to his or her ability to protect himself or herself; the severity of the occurrence; [t]he frequency of the occurrence; [t]he alleged perpetrator's physical, mental and/or emotional abilities, particularly related to his or her ability to control his or her actions; [t]he dynamics of the relationship between the alleged perpetrator and the child; [t]he alleged perpetrator's access to the child; [t]he previous history of indicated abuse or neglect; [t]he current stresses/crisis in the home; [t]he presence of other supporting persons in the home." 89 Ill. Adm. Code 300 app. B.

¶ 39 Plaintiff maintains that allegation 60 is an invalid basis to support an indicated finding of neglect, and the placement of plaintiff's name on the central register because the definition of "neglected child" in the Reporting Act does not include the language "subjecting a child to an environment injurious to his welfare." Defendants argue that allegation 60 is consistent with the Reporting Act and, therefore, a valid regulation. However, this court need not reach the issue regarding the validity of allegation 60 where the ALJ in the present case should have dismissed plaintiff's administrative appeal based on section 336.190(a)(3) of DCFS's rules, which implements section 7.16 of the Reporting Act.

¶ 40          C. Dismissal of an Appeal Under the Reporting Act and DCFS's Rules

¶ 41 Plaintiff sought reversal of the indicated report of neglect with respect to M.W. and expungement of the report from the central register through the administrative appellate process established by the Reporting Act (325 ILCS 5/1 *et seq.* (West 2006)).

¶ 42 Section 7.16 of the Reporting Act provides the subject of an indicated report of child abuse or neglect who has been placed on the central registry with the right to a hearing to challenge whether the record of the report should be amended or removed. 325 ILCS 5/7.16 (West 2006). Section 7.16 includes the following exception to the right to a hearing: "[T]here shall be no such right to a hearing on the ground of the report's inaccuracy if there has been a court finding of child abuse or neglect, the report's accuracy being conclusively presumed on such finding." 325 ILCS 5/7.16 (West 2006).

¶ 43 In the present case, this court affirmed the circuit court's finding of neglect with respect to M.W. *In re M.W.*, 386 Ill. App. 3d at 198. This court reversed the circuit court's dispositional order where the evidence established that plaintiff was unable to safely care for and protect M.W. and that reunification was not in M.W.'s best interest. *In re M.W.*, 386 Ill. App. 3d at 199. As a result, this court entered a disposition order placing M.W. in the guardianship and custody of DCFS. *In re M.W.*, 386 Ill. App. 3d at 200-01.

¶ 44    Accordingly, the record shows that this court has entered judicial findings of child neglect with respect to M.W. Therefore, pursuant to section 7.16 of the Reporting Act, the indicated report's accuracy is "conclusively presumed on such finding" and plaintiff was not entitled to an administrative hearing to challenge whether the report should be removed from the central register. 325 ILCS 5/7.16 (West 2006).

¶ 45    Plaintiff, nonetheless, argues that the exception to a hearing provided in section 7.16 of the Reporting Act does not apply in this case because she does not challenge the factual findings made with respect to the indicated report of child neglect. Rather, plaintiff maintains that she has presented a purely legal issue–whether DCFS's allegation 60 is a valid basis to support an indicated finding of neglect, and the placement of plaintiff's name on the central register under the Reporting Act. Plaintiff asserts that no court has made a judicial finding on this issue and, therefore, she was entitled to a hearing under the Reporting Act.

¶ 46    However, plaintiff's argument is essentially that her actions toward M.W., while constituting child neglect under the Juvenile Court Act, do not provide a basis to support an indicated finding of child neglect under the Reporting Act. This is the type of inquiry prohibited by section 7.16 of the Reporting Act. Section 7.16 specifically provides that DCFS must be bound by a previous judicial finding of child abuse or neglect and prohibits the agency from conducting a hearing to second-guess a court's finding based on identical facts. While a party may appeal a court's finding of child abuse or neglect, the party may not challenge such finding through the agency's decision under the Reporting Act.

¶ 47    We note that plaintiff argues that such a broad interpretation of section 7.16 would allow DCFS to enter an indicated finding of abuse or neglect whenever it found that the exception in section 7.15 applied, regardless of whether the Reporting Act encompassed the category of abuse or neglect considered by the court in making its finding. Plaintiff contends that such interpretation of section 7.16 would lead to circumstances where parties could use language of the Illinois Domestic Violence Act of 1986 (750 ILCS 60/214(a) (West 2006)) or the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/602(c) (West 2006)) to attempt to have DCFS place an opposing party on the central register. However, this issue is not before us. Rather, the issue presented in this case pertains to this court's previous judicial finding of child neglect with respect to M.W. under the Juvenile Court Act, and whether plaintiff was entitled to a hearing to challenge whether her actions toward M.W. also constituted child neglect under the Reporting Act. As previously explained, section 7.16 prohibits such inquiry.

¶ 48    Section 336.190(a)(3) of DCFS's rules implements section 7.16 of the Reporting Act. Section 336.190(a)(3) provides the following ground for dismissal of an appeal of child abuse and neglect investigation findings:

"(a) The Chief Administrative Law Judge or the Administrative Law Judge shall dismiss the appeal on his or her own motion or on the motion of any party when:

* * *

(3) a court has made a judicial decision on the issue being appealed or a judicial finding of child abuse or neglect has been made on the issue and the appellant is requesting that the record of the report of child abuse or neglect be

expunged, amended or removed[.]" 89 Ill. Adm. Code 336.190(a)(3).

¶ 49    Here, this court entered judicial findings of child neglect with respect to M.W. *In re M.W.*, 386 Ill. App. 3d at 198-99. Since plaintiff's appeal under the Reporting Act sought to expunge the record of the report of child neglect with respect to M.W., the ALJ should have dismissed plaintiff's appeal pursuant to section 336.190(a)(3) of DCFS's rules. 89 Ill. Adm. Code 336.190(a)(3).

¶ 50                                    III. CONCLUSION

¶ 51    For the above reasons, we find that plaintiff's administrative appeal should have been dismissed pursuant to section 7.16 of the Reporting Act (325 ILCS 5/7.16 (West 2006)) and section 336.190(a)(3) of DCFS's rules (89 Ill. Adm. Code 336.190(a)(3)). Therefore, we do not considers plaintiff's argument that allegation 60 contained in DCFS's rules is an invalid basis to support an indicated finding of neglect and the placement of her name on the central register under the Reporting Act.

¶ 52    Reversed.