# Illinois Official Reports

## Appellate Court

---

*Campbell v. Department of Children & Family Services*,
2016 IL App (2d) 150747

---

| | |
|---|---|
| Appellate Court Caption | ANIKA CAMPBELL, Plaintiff-Appellant, v. THE DEPARTMENT OF CHILDREN AND FAMILY SERVICES; GEORGE SHELDON, in His Official Capacity as Acting Director of Children and Family Services; and DEVION C., NARIAH C., EDWARD G., AMYA G., and CADARO R., Minors, Defendants-Appellees. |
| District & No. | Second District<br>Docket No. 2-15-0747 |
| Rule 23 order filed<br>Rule 23 order<br>withdrawn<br>Opinion filed | December 16, 2015<br><br>February 23, 2016<br>February 23, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 14-MR-1216; the Hon. David R. Akemann, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Jaime L. Mosser, of Klein & Mosser, LLC, of Elgin, for appellant.<br><br>Lisa Madigan, Attorney General, of Chicago (Carolyn E. Shapiro, Solicitor General, and Laura M. Wunder and Christina T. Hansen, Assistant Attorneys General, of counsel), for appellees. |

JUSTICE SPENCE delivered the judgment of the court, with opinion. Presiding Justice Schostok and Justice Burke concurred in the judgment and opinion.


**OPINION**

¶ 1       Plaintiff, Anika Campbell, filed an administrative service appeal after defendant the Department of Children and Family Services (DCFS) removed five children from her care. An administrative law judge (ALJ) ultimately dismissed Campbell's service appeal in a final administrative decision. The ALJ determined that the dismissal was required by a decision in the children's juvenile court proceedings. Campbell filed a complaint in the trial court seeking review of the dismissal of her service appeal, and the trial court affirmed the dismissal. Campbell appeals, arguing that the decision in the juvenile court did not require the dismissal of her service appeal in the administrative proceeding. We affirm.

¶ 2                           I. BACKGROUND

¶ 3       Campbell was a relative with whom the five children, Devion C., Nariah C., Edward G., Amya G., and Cadaro R. had been placed in foster care. According to Campbell, she had cared for each child for between 16 months and 8 years, until they were removed from her care by DCFS on April 16, 2014, based on allegations of abuse or neglect.

¶ 4       In response to the children's removal, Campbell sought a clinical placement review. DCFS held a clinical placement review on April 30, 2014, and concluded that the removal was in the children's best interests. Campbell then requested a service appeal of the clinical placement review.

¶ 5       The children also became the subject of juvenile court proceedings on the abuse or neglect allegations, and Campbell filed a *pro se* motion to intervene in those proceedings. See 705 ILCS 405/1-5(2)(c) (West 2014) (if a minor's placement in a foster parent's home is being terminated, the "foster parent shall have standing and intervenor status except in those circumstances" where DCFS "has removed the minor from the foster parent because of a reasonable belief that the circumstances or conditions of the minor are such that continuing in the residence or care of the foster parent will jeopardize the child's health or safety or presents an imminent risk of harm to the minor's life").

¶ 6       The juvenile court conducted a hearing at which Campbell, acting *pro se*, addressed the children's removal. The juvenile court heard testimony from Campbell, a DCFS child-protection investigator, and the children's caseworker. Campbell was allowed to cross-examine witnesses and present closing argument.

¶ 7       On August 27, 2014, the juvenile court denied Campbell's motion to intervene (August order). The juvenile court determined that the removal of the children was based on a "reasonable belief that the circumstances or conditions of the minors were such that continuing in the residence or care of the foster parent would jeopardize the children's health or safety or present an imminent risk of harm to the minors."

¶ 8    After the juvenile court denied Campbell's motion to intervene, DCFS moved to dismiss the pending service appeal in the administrative proceeding. An ALJ held a hearing on the motion to dismiss on October 14, 2014.

¶ 9    At the hearing, DCFS argued that the issue raised in the service appeal had been decided in its August order and that, as such, the service appeal was prohibited by DCFS regulations and had to be dismissed. See 89 Ill. Adm. Code 337.110(a)(4), amended at 36 Ill. Reg. 4388 (eff. Mar. 7, 2012) (the ALJ shall dismiss a request for a service appeal if a court has made a judicial determination or issued an order on the issue being appealed). Campbell responded that the abuse or neglect allegations had been deemed unfounded,[1] she did not have access to those findings when she sought to intervene in the juvenile court proceedings, and the ALJ had the authority to determine the best placement for the children. DCFS countered that Campbell's view of the scope of the service appeal was too broad; the only issue in the service appeal was whether DCFS had made a mistake in removing the children in the first place. DCFS argued that therefore it was irrelevant that the allegations of abuse or neglect were ultimately unfounded.

¶ 10    The ALJ granted DCFS's motion to dismiss on the basis that the juvenile court had made "a finding that [was] exactly the issue that [was] here." The ALJ clarified that he had no authority to determine the most appropriate placement for the children. Rather, he was bound by the juvenile court's August order determining that DCFS had properly removed the children based on a "reasonable belief that the circumstances or conditions of the minors were such that continuing in the residence or care of the foster parent would jeopardize the children's health or safety or present an imminent risk of harm to the minors." The ALJ's October 15, 2014, order dismissed Campbell's service appeal on the basis that the juvenile court had made "a judicial determination or issued an order on the issue being appealed." *Id.*

¶ 11    On November 20, 2014, Campbell filed a complaint in the trial court for administrative review of the dismissal of her service appeal. On June 23, 2015, the trial court issued a written decision affirming the dismissal. In its decision, the court stated as follows.

¶ 12    The parties agreed that the question presented was whether the juvenile court's August order required the dismissal of Campbell's service appeal in the administrative proceeding. Campbell's position was that the August order did not require the dismissal of her service appeal because the August order was a denial of her motion to intervene and not a decision on the issue presented in the service appeal. In addition, Campbell argued that she was entitled to a "fair hearing" of her service appeal and that the August order could not be the ground for the denial of that right.

¶ 13    DCFS countered that the issue of whether the children should have been removed from Campbell was central to the ruling on her motion to intervene in the juvenile court. DCFS also argued that the purpose of the service appeal was not to determine whether the children should be returned to Campbell; rather, the issue was whether DCFS acted consistently with the children's needs regarding safety, well being, and permanency when it removed the children from Campbell.

¶ 14    In affirming the dismissal of the service appeal, the trial court stated that the fact that DCFS had eventually deemed "unfounded" the abuse or neglect allegations was "not

---

[1]It is undisputed that on July 31 and August 20, 2014, DCFS deemed all of the abuse or neglect allegations unfounded.

- 3 -

controlling on the Juvenile Court to make a finding that the removal was based on a reasonable belief as to the children's best interest." The court further stated that, because Campbell was a relative foster parent, she had the right to request DCFS to consider her as a placement for the children in the future.

¶ 15    Campbell timely appealed.

¶ 16                                        II. ANALYSIS

¶ 17    In an appeal from an administrative agency's decision, we review the agency's determination and not the trial court's determination. *Tiller v. Department of Children & Family Services*, 2013 IL App (4th) 120504, ¶ 27. An agency's decision on a question of law is not binding on a reviewing court and is reviewed *de novo. Burris v. Department of Children & Family Services*, 2011 IL App (1st) 101364, ¶ 30. The interpretation of agency rules and regulations is a question of law, which we review *de novo. Id.* However, an agency's interpretation of its own rules and regulations enjoys a presumption of validity. *Id.*

¶ 18    Campbell argues that the issue in this case is purely a question of law, entitled to *de novo* review, whereas the State argues that the issue is better characterized as a mixed question of law and fact. According to the State, the issue is a mixed question of law and fact because it involves whether the facts surrounding the juvenile court proceedings satisfy the regulatory standard for dismissing a service appeal. See *Lombard Public Facilities Corp. v. Department of Revenue*, 378 Ill. App. 3d 921, 928 (2008) (a mixed question of law and fact asks whether the established facts satisfy a statutory standard or whether the rule of law, as applied to the established facts, was violated). The State thus argues that our review should be under the "clearly erroneous" standard. See *Tiller*, 2013 IL App (4th) 120504, ¶ 27 (in administrative review cases, this court reviews mixed questions of law and fact under the clearly erroneous standard). "The clearly-erroneous standard of review lies somewhere between a *de novo* and a manifest-weight-of-the-evidence standard, but provides some deference to the agency's experience and expertise." *Lombard Public Facilities Corp.*, 378 Ill. App. 3d at 928.

¶ 19    The juvenile court proceedings are not part of the record, and we are not analyzing the propriety of the removal decision. Rather, we are reviewing the propriety of the dismissal of the service appeal, and the facts relating to that issue are undisputed. Because that issue involves only the interpretation of statutes and administrative rules, we review it *de novo* while recognizing that an agency's interpretation of its own rules and regulations enjoys a presumption of validity.

¶ 20    The Children and Family Services Act provides for DCFS's establishment of an administrative review and appeal process for children and families who request or receive child welfare services from DCFS. 20 ILCS 505/5(o) (West 2014); 89 Ill. Adm. Code 337.10 *et seq.* (1995). In this case, after the children were removed by DCFS, Campbell requested a clinical placement review, which is a process by which DCFS reviews a disputed decision to remove a child from the home of a foster family or relative caregiver. See 89 Ill. Adm. Code 337.20, amended at 36 Ill. Reg. 4388 (eff. Mar. 7, 2012). In a clinical placement review, DCFS reviews the current placement, the reason for the child's removal, and the child's needs regarding safety, well being, and permanency. 89 Ill. Adm. Code 337.30(c)(2) (2012). In this case, DCFS's decision to remove the children was affirmed in the clinical placement review.

¶ 21    Campbell then requested a service appeal. See 89 Ill. Adm. Code 337.30(c)(6) (2012) (when the caregiver disagrees with the final clinical placement review decision, the caregiver may request a hearing, *i.e.*, a service appeal). "When the issue is the removal of a child from the home of a foster family or relative caregiver, the service appeal process for [DCFS] consists of a fair hearing after a clinical placement review of the decision to remove the child ***." 89 Ill. Adm. Code 337.30 (2012). At a fair hearing, conducted by an ALJ, DCFS and all parties may present evidence supporting their position. See 89 Ill. Adm. Code 337.30(e) (2012). The burden of proof is on the appellant to show by a preponderance of the evidence that the decision made by the clinical placement reviewer was not consistent with the child's needs regarding safety, well being, and permanency. See 89 Ill. Adm. Code 337.30(e)(1) (2012).

¶ 22    Based on the evidence, the ALJ then makes a recommendation to the director of DCFS. 89 Ill. Adm. Code 337.30(e) (2012). The Director of DCFS "may agree or disagree with or modify" the ALJ's recommendation (89 Ill. Adm. Code 337.220 (2002)), and the director's final administrative decision is subject to judicial review (89 Ill. Adm. Code 337.240, amended at 36 Ill. Reg. 4388 (eff. Mar. 7, 2012)).

¶ 23    In this case, the ALJ made no recommendation to the director because Campbell's service appeal was dismissed. In the administrative review process, the ALJ "shall dismiss a request for a service appeal for the following reasons," one of which is that "a court has made a judicial determination or issued an order on the issue being appealed." 89 Ill. Adm. Code 337.110(a)(4), amended at 36 Ill. Reg. 4388 (eff. Mar. 7, 2012).

¶ 24    As previously stated, while Campbell's administrative service appeal was pending, she filed a *pro se* motion to intervene in the proceedings in the juvenile court. Under the Juvenile Court Act of 1987 (Juvenile Act), a "foster parent shall have standing and intervenor status *except* in those circumstances where the Department of Children and Family Services *** has removed the minor from the foster parent because of a reasonable belief that the circumstances or conditions of the minor are such that continuing in the residence or care of the foster parent will jeopardize the child's health or safety or presents an imminent risk of harm to the minor's life." (Emphasis added.) 705 ILCS 405/1-5(2)(c) (West 2014).

¶ 25    As noted, the juvenile court proceedings are not part of the record. Nevertheless, it is undisputed that the juvenile court conducted a hearing at which it heard testimony from Campbell, a DCFS child-protection investigator, and the children's caseworker. In addition, Campbell was allowed to cross-examine witnesses and present closing argument. In the juvenile court's August order, it denied Campbell's motion to intervene, based on a "reasonable belief that the circumstances or conditions of the minors were such that continuing in the residence or care of the foster parent would jeopardize the children's health or safety or present an imminent risk of harm to the minors."

¶ 26    Based on the juvenile court's August order, the ALJ dismissed Campbell's service appeal. According to the ALJ, the juvenile court had made "a judicial determination or issued an order on the issue being appealed" in the service appeal. Accordingly, the sole question on appeal here is whether the juvenile court's August order was a judicial determination on the issue presented in the service appeal, thus requiring the ALJ to dismiss the service appeal.

¶ 27    Campbell lists several reasons why the ALJ erred by dismissing her service appeal. First, she argues that the juvenile court did not decide the issue presented in the service appeal because the Juvenile Act prohibited it from doing so. Campbell points out that, while the

juvenile court determines whether a child should be made a ward of the court (705 ILCS 405/2-22(1) (West 2014)), it is not empowered to order specific placements (705 ILCS 405/2-28(2) (West 2014)). According to Campbell, given the juvenile court's limited role, it lacked authority to consider the issue in the service appeal, which she characterizes as "whether the children should not be returned to" her care.[2]

¶ 28    Taking this argument a step further, Campbell asserts that, even if the juvenile court possessed the authority to consider the issue presented in the service appeal, the juvenile court's inquiry was more limited than the inquiry in the service appeal. Campbell argues that the juvenile court was limited to considering only preremoval evidence, involving a narrow time period, whereas the service appeal would have involved a broader and more comprehensive assessment of the propriety of the clinical placement reviewer's decision. Campbell asserts that, unlike the juvenile court, the ALJ in the service appeal would have considered both preremoval and postremoval evidence. In other words, Campbell argues that, even though DCFS could have had a "reasonable belief" that the children were in danger prior to their removal, she still could have met her burden of showing, in light of both the preremoval and postremoval evidence, that the clinical placement reviewer's decision was not consistent with the children's overall needs regarding safety, well being, and permanency. This is particularly true, Campbell argues, where the abuse or neglect allegations were ultimately deemed unfounded.

¶ 29    Campbell's argument that the juvenile court lacked authority to decide the issue presented in the service appeal is premised on a misunderstanding of the nature of the service appeal. Contrary to Campbell's assertion, the issue in the service appeal was not "whether the children should [or should not] be returned to" her care. Rather, the issue was the propriety of the decision to remove the children. As stated, a clinical placement review is the process of reviewing a disputed decision to remove a child (89 Ill. Adm. Code 337.20, amended at 36 Ill. Reg. 4388 (eff. Mar. 7, 2012)), and the service appeal provides a review of the reviewer's decision (89 Ill. Adm. Code 337.30(c)(8) (2012)). In the service appeal, Campbell would have borne the burden of showing by a preponderance of the evidence that the clinical placement reviewer's decision to affirm the removal was not consistent with the children's needs regarding safety, well being, and permanency. See 89 Ill. Adm. Code 337.30(e)(1) (2012). Therefore, rather than determining whether the children should or should not be returned to her care, the service appeal would have determined only whether the affirmance of the removal decision was consistent with the children's needs regarding safety, well being, and permanency.

¶ 30    In this sense, Campbell's argument that the service appeal would have encompassed postremoval evidence that the allegations of abuse or neglect were unfounded is without merit. Again, the issue in the service appeal was whether the clinical placement reviewer's decision to affirm the removal was consistent with the children's need for safety, well being, and permanency. Thus, the focus of the service appeal was on the propriety of the children's removal and not on evidence that emerged after the removal. Indeed, Campbell cites no authority for her argument that a service appeal encompasses postremoval evidence, and the

---

[2]In the event that this is a typo, in that Campbell meant to characterize the issue in the service appeal as "whether the children *should* be returned to" her care, our result is the same. (Emphasis added.)

ALJ rejected her arguments to this effect. See *Burris*, 2011 IL App (1st) 101364, ¶ 30 (an agency's interpretation of its own rules and regulations enjoys a presumption of validity).

¶ 31     For example, even if the service appeal had not been dismissed, and the ALJ had disagreed with the clinical placement reviewer's decision to affirm the removal, the remedy would not have been to automatically return the children to her. See *Benz v. Department of Children & Family Services*, 2015 IL App (1st) 130414, ¶¶ 16-19 (after the foster parents requested a service appeal of the removal of the child, and the ALJ found that the decision to remove the child was *not* consistent with the child's needs regarding safety, well being, and permanency, the DCFS director found that it was in the child's current best interests to remain in his current placement). In other words, although the fact that the allegations against Campbell were eventually deemed unfounded will likely be relevant in future proceedings, it was not in the service appeal, at which the only issue was whether the removal was consistent with the children's needs for safety, well being, and permanency.

¶ 32     Second, Campbell points to a recent amendment to section 5(o) of the Children and Family Services Act (20 ILCS 505/5(o) (West 2014)) as proof that the juvenile court's August order could not be a basis to dismiss her service appeal. The amendment states that "[a] court determination that a current foster home placement is necessary and appropriate under Section 2-28 of the Juvenile Court Act of 1987 does not constitute a judicial determination on the merits of an administrative appeal, filed by a former foster parent, involving a change of placement decision." Pub. Act 98-249, § 5 (eff. Jan. 1, 2014) (amending 20 ILCS 505/5(o) (West 2012)).

¶ 33     The amendment does not aid Campbell. The juvenile court's decision in this case was not pursuant to section 2-28 of the Juvenile Act, which requires the juvenile court to conduct a permanency hearing within 12 months of the entry of a temporary custody order and at least every 6 months thereafter. 705 ILCS 405/2-28(2) (West 2014); *In re D.S.*, 198 Ill. 2d 309, 326 (2001). Section 2-28 provides that "[a]t the permanency hearing, the court shall determine the future status of the child," and the court complies with this directive by selecting a permanency goal, from among several listed in section 2-28, that the court finds to be "in the best interest of the child." 705 ILCS 405/2-28(2) (West 2014). Accordingly, while a judicial determination under section 2-28 of the Juvenile Act is not the type of determination requiring dismissal of a service appeal (see 89 Ill. Adm. Code 337.110(a)(4), amended at 36 Ill. Reg. 4388 (eff. Mar. 7, 2012) (the ALJ shall dismiss a request for a service appeal if a court has made a judicial determination or issued an order on the issue being appealed)), the juvenile court's decision in this case was made not under section 2-28 of the Juvenile Act but rather under section 1-5 of the Juvenile Act, which pertains to motions to intervene. See 705 ILCS 405/1-5(2)(c) (West 2014).

¶ 34     The trial court reached the same result when denying Campbell's complaint for judicial review of the dismissal of her service appeal. In its written decision, the trial court stated that section 2-28 of the Juvenile Act "deals with a periodic review of the goal, tasks and services of each case." According to the court, the juvenile court's August order "was not simply a court review of the case plan under [section] 2-28 of the [Juvenile] Act." Rather, it was a decision under section 1-5(2)(c), entitled "Rights of parties to proceedings," in response to Campbell's motion to intervene. See *id.*

¶ 35     As the trial court found, the juvenile court's denial of Campbell's motion to intervene was a judicial determination on the issue being appealed in the service appeal, which was

whether the removal decision was consistent with the children's needs regarding safety, well being, and permanency. Indeed, the August order stated that "the removal of the children from [Campbell's] home was based on a reasonable belief that the circumstances or conditions of the minors were such that continuing in the residence or care of the foster parent would jeopardize the children's health or safety or present an imminent risk of harm to the minors." See *id.* (foster parent shall have standing and intervenor status *except* in those circumstances where DCFS has removed the minor from the foster parent because of a reasonable belief that the circumstances or conditions of the minor are such that continuing in the residence or care of the foster parent will jeopardize the child's health or safety or presents an imminent risk of harm to the minor's life). Because the August order was not made pursuant to section 2-28 of the Juvenile Act, but was issued in response to Campbell's motion to intervene, pursuant to section 1-5 of the Juvenile Act, and because it contained a judicial determination as to DCFS's decision to remove the children from Campbell's care, Campbell's argument to the contrary fails.

¶ 36    Third, Campbell argues that "the only way" to seek judicial review of a final administrative decision is through the administrative review process. She cites section 9.9 of the Children and Family Services Act, which states that "[a]ny responsible parent or guardian affected by a final administrative decision of [DCFS] *** may have the decision reviewed only under and in accordance with the Administrative Review Law." 20 ILCS 505/9.9 (West 2014). Again, Campbell's argument is easily rejected because it is the administrative review process itself that requires the dismissal of a service appeal when a court has made a judicial determination or issued an order on the issue being appealed. See 89 Ill. Adm. Code 337.110(a)(4), amended at 36 Ill. Reg. 4388 (eff. Mar. 7, 2012) (the ALJ shall dismiss a request for a service appeal if a court has made a judicial determination or issued an order on the issue being appealed).

¶ 37    Fourth, Campbell argues that dismissing her service appeal on the basis of the juvenile court's determination is akin to the application of the *res judicata* doctrine, which should not apply. *Res judicata* was never a theory advanced by DCFS, and we have determined that, under the applicable law, the juvenile court's August order required the dismissal of the service appeal. Accordingly, we need not explore this argument further.

¶ 38    Finally, we note that the juvenile court conducted a hearing on the merits of the children's removal. While the August order resulted in the dismissal of Campbell's administrative service appeal, it was because the issue in the service appeal had been heard and decided by the juvenile court. Moreover, as the trial court noted, the dismissal of Campbell's service appeal does not preclude her from seeking to care for the children in the future.

¶ 39                                    III. CONCLUSION

¶ 40    For the aforementioned reasons, the judgment of the Kane County circuit court is affirmed.

¶ 41    Affirmed.