2023 IL App (2d) 220015-U
No. 2-22-0015
Order filed May 19, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| JUSTIN M. HUBLY, | ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 20-MR-1296 |
| | ) | |
| CARMEN I. AYALA, in Her Official Capacity as State Superintendent of Education, EMILY FOX, in Her Official Capacity as Secretary of the State Educator Preparation and Licensure Board, ELIZABETH SIMON, in Her Official Capacity as Hearing Officer for the State Educator Preparation and Licensure Board, ILLINOIS STATE BOARD OF EDUCATION, and STATE EDUCATOR PREPARATION AND LICENSURE BOARD, | ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | Honorable |
| | ) | Thomas A. Meyer, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Hutchinson and Jorgensen concurred in the judgment.

**ORDER**

¶ 1   *Held*:  The State Educator Preparation and Licensure Board's decision to revoke plaintiff's professional educator license was neither an abuse of discretion nor contrary to law. Further, the State Educator Preparation and Licensure Board did not exceed its legal authority in revoking plaintiff's professional educator license.

¶ 2    Plaintiff, Justin M. Hubly, appeals *pro se* from an order of the circuit court of McHenry County affirming a decision of the State Educator Preparation and Licensure Board (Board). In its decision, the Board revoked Hubly's professional educator license. On appeal, Hubly argues that the Board's decision to revoke his license was unduly harsh and contrary to law. Hubly also asserts that the Board exceeded its legal authority in revoking his license. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    Hubly worked as a music teacher at Crystal Lake Central High School. In October 2016, the school's administration received information that Hubly, who was 34 years old at the time, may have engaged in inappropriate conduct with several former students after their graduation. Prior to contacting the police, the administration investigated the allegations internally. The administration eventually turned the matter over to the Crystal Lake Police Department, which conducted its own investigation.

¶ 5    The administration and the police received information that Hubly kissed and/or groped two former students and that he provided alcohol to five underage former students. Hubly was ultimately charged with: (1) battery for touching Rebecca Polk's breast sometime between June 1 and July 31, 2016 (720 ILCS 5/12-3(a)(2) (West 2016)); (2) unlawful delivery of alcohol to a minor for giving Polk alcohol during the same time period (235 ILCS 5/6-16(a)(iii) (West 2016)); (3) battery for touching Nicole Dombrowski's thigh, kissing her neck, and kissing her mouth on October 7, 2016 (720 ILCS 5/12-3(a)(2) (West 2016)); and (4) four additional counts of unlawful delivery of alcohol to a minor for giving Dombrowski alcohol on October 7, 2016, and for giving Trevor Bryan, Katie Murphy, and Jennifer Anderson alcohol on December 30, 2015 (235 ILCS 5/6-16(a)(iii) (West 2016)). All charges against Hubly were misdemeanors. 735 ILCS 5/12-3(b) (West 2016) (battery); 235 ILCS 5/6-16(a) (West 2016) (unlawful delivery of alcohol to a minor).

Following a bench trial, the circuit court of McHenry County found Hubly guilty of battery with respect to both Polk and Dombrowski. The court also found Hubly guilty of unlawful delivery of alcohol to a minor with respect to Polk, Dombrowski, Bryan, and Murphy. The court found Hubly not guilty of unlawful delivery of alcohol to a minor with respect to Anderson. The court sentenced Hubly to conditional discharge on the battery convictions and to supervision on the unlawful-delivery-of-alcohol-to-a-minor convictions. Hubly appealed. On September 16, 2019, this court affirmed Hubly's convictions and sentences. *People v. Hubly*, 2019 IL App (2d) 180619-U.

¶ 6      On or about December 31, 2019, the State Superintendent of Education (Superintendent) issued to Hubly a notice of opportunity for hearing. The notice advised Hubly that his professional educator license was subject to revocation pursuant to section 21B-75 of the Illinois School Code (School Code) (105 ILCS 5/21B-75 (West 2018)) based on conduct alleged in the attached statement of charges. The Superintendent amended the statement of charges in May 2020. As amended, the statement of charges alleged as follows. Hubly was a music teacher at Crystal Lake Central High School from April 15, 2004, until November 7, 2016, when he resigned. During Hubly's employment at the school, he engaged in unprofessional behavior with some of his former students. Specifically, on or about December 30, 2015, Hubly provided alcoholic beverages to two former students—Bryan and Murphy—even though they were both under 21 years of age. Further, in or about June or July 2016, Hubly invited Polk, a former student, to his residence, placed his hand on Polk's breast without her consent, and served Polk alcohol even though she was under 21 years of age. Additionally, on or about October 7, 2016, Hubly invited Dombrowski, a former student, to his residence where he kissed her, rubbed his hands on her thighs, attempted to touch her breast, and served her alcohol even though she was under 21 years of age. The Superintendent asserted that respondent's behavior established "unprofessional conduct, immorality, or other just

cause that preclude [*sic*] him from continuing to hold a Professional Educator License." The Superintendent recommended that Hubly's professional educator license be revoked pursuant to section 21B-75 of the School Code (105 ILCS 5/21B-75 (West 2018)). In response to the Superintendent's notice, Hubly filed a written request for hearing.

¶ 7    A hearing on the amended statement of charges was held virtually before hearing officer Elizabeth Simon on June 19, 2020. Prior to the hearing, the parties entered into a stipulation which provided, among other things, that, in lieu of calling witnesses, the parties would stipulate to the entry of the transcript from Hubly's criminal trial and that the testimony of the witnesses at the criminal matter would be the same as if they had been called to testify at the revocation hearing. The hearing officer admitted the parties' stipulation as well as numerous joint exhibits and other exhibits. The transcript of Hubly's criminal trial provided in relevant part as follows.

¶ 8    Polk testified that she graduated from Crystal Lake Central High School in 2014 and that Hubly was her musical director at the school. For the first two years after she graduated, Polk worked at the school as the assistant choreographer for productions. As part of that experience, Polk developed a relationship with Hubly that turned into a close friendship. Polk further testified that she met with Hubly around 10 times during the summer of 2016. Polk recalled one particular occasion in late June or early July 2016 when she went to Hubly's house around 9 or 10 p.m. to drink and talk. Polk stated that at the time, she was 19 years of age but would turn 20 at the end of July. Polk testified that upon her arrival, Hubly had a shot of tequila waiting for her, which she drank. Polk also testified that they were discussing "random stuff" when Hubly "started talking about boobs, and he had said that [she] had nice boobs, and then he grabbed [her breast]." Specifically, Polk stated that Hubly quickly grabbed her breast under her clothing, squeezed, let

go, and then removed his hand. Polk stated that she felt "shocked," "grossed out," and "taken aback" by Hubly's actions and became "uncomfortable," leaving shortly thereafter.

¶ 9    Dombrowski testified that she graduated from Crystal Lake Central High School in 2015 and that Hubly was her choir and musical director. Dombrowski maintained a relationship with Hubly after she graduated. Dombrowski stated that she and Hubly were friends and that he would give her advice and guidance as she struggled with being homesick during the transition from high school to college. In October 2016, Dombrowski made plans via text to go to Hubly's house on October 7 to hang out, talk, and catch up. Dombrowski was 19 years of age at that time. Dombrowski knew that she was going to be drinking, so she asked her sister to be her designated driver.

¶ 10    Dombrowski testified that her sister dropped her off at Hubly's house between 10:30 and 11 p.m. Dombrowski asked her sister to pick her up at 1 a.m. Dombrowski testified that when she arrived at Hubly's home, he was the only person there. Dombrowski said that Hubly gave her two mixed drinks and a shot of tequila, which she drank. Hubly was also drinking alcohol. Although Dombrowski brought a bottle of wine with her, she did not bring the alcohol used to make the mixed drinks. Dombrowski testified that as she and Hubly were talking, Hubly "leaned forward, kind of got up on his knee, and began kissing [her] on [her] mouth and then stuck his tongue down [her] throat and began kissing [her] neck as well." Asked what she meant when she said that Hubly stuck his tongue down her throat, Dombrowski responded, "Like in a very aggressive way he kind of forced his tongue into [her] mouth." Dombrowski said that as Hubly kissed her, his hands were "rubbing on [her] thighs and on [her] stomach" and that Hubly "put his hand up [her] shirt and attempted to grab [her] breast." Dombrowski said Hubly was not successful in grabbing her breast because she "squirmed away." Asked what, if anything, she was doing while this was happening,

Dombrowski responded that she was not doing anything and "was not reciprocating the action." Dombrowski testified that she felt "uncomfortable" and "very scared" while Hubly kissed her and rubbed her thighs. She also felt "uncomfortable" and "violated" when Hubly tried to grab her breast. Dombrowski explained that she stayed on the couch because she did not have anywhere else to go. Dombrowski and Hubly then talked for 30 to 45 minutes. According to Dombrowski, Hubly's demeanor was "very flirtatious and very forward, and he was sitting close to [her]." Hubly then kissed her a second time. Dombrowski stated that she felt "uncomfortable and scared" the second time he kissed her. After the second kiss, Dombrowski texted her sister to come pick her up. As Dombrowski was leaving, Hubly hugged her and attempted to kiss her a third time, but she backed away when he leaned in.

¶ 11    Anderson testified that she graduated from Crystal Lake Central High School in 2014 and that Hubly was her high school choir director. After graduation, Anderson maintained a relationship with Hubly, which she described as an "[a]uthoritative friendship." Anderson further testified that she went to Hubly's home three or four times after she graduated. Anderson recalled one occasion around New Year's in 2015 or 2016 when she and some friends went to Hubly's house and she consumed alcohol there. Anderson testified that Hubly made the drinks for her and "[m]ost of the people that were there." At the time, Anderson was 19 years of age. Anderson denied bringing any alcohol to Hubly's house.

¶ 12    Bryan testified that he graduated from Crystal Lake Central High School in 2014 and that Hubly was a former teacher of his. After graduation, Bryan maintained a relationship with Hubly. Bryan testified that in December 2015, he was at Hubly's home with several former students and Hubly served him alcohol. Bryan testified that he was 19 years of age at the time. Bryan said that he consumed several mixed drinks, a shot of tequila, and a shot of gin. Bryan testified that Hubly

"poured all the drinks," adding "we've been drinking at Hubly's so many times." Hubly also consumed alcohol that night. Bryan further testified that Hubly specifically instructed the former students not to take photos or videos in his home. Bryan denied bringing any alcohol with him to Hubly's house. In addition, Bryan stated that Anderson did not drink alcohol on the night in question because she was the designated driver.

¶ 13    Murphy testified that she graduated from Crystal Lake Central High School in 2014 and that although Hubly was a teacher at the school, he was never her teacher. Murphy said that she met Hubly after graduation through friends. Murphy testified that during winter break of 2015, she was at Hubly's home with several of her former high school classmates. At that time, Hubly served her alcohol. Murphy stated she was 20 years of age at that time. Murphy said that she consumed several mixed drinks and several shots and that Hubly made the mixed drinks. Murphy denied bringing any alcohol with her to Hubly's home.

¶ 14    Hubly testified on his own behalf. He denied many of the above actions attributed to him. With respect to Polk, Hubly denied that she had been inside his home during the summer of 2016, denied serving her alcohol, and denied talking about or touching her breasts. Regarding Dombrowski, Hubly admitted giving her two mixed drinks and a shot of tequila. Hubly testified that he and Dombrowski "kissed mutually." Hubly admitted touching Dombrowski's thighs, but denied putting his tongue in her mouth, putting his hand up her shirt, or kissing her a second time. Hubly said that in October 2016, he was 34 years of age, which was 15 years older than Dombrowski. Hubly characterized their kiss as "misconstrued," but believed that Dombrowski had otherwise testified truthfully. Regarding Bryan, Murphy, and Anderson, Hubly denied serving them alcohol in December 2015. He said that the only alcohol that was consumed that night was what the group had brought with them. He added that "[t]hey were drunk when they got [to his

home].” Hubly opined that other than Dombrowski, the students had “walked into this courtroom like they walked into District 155, and they lied.” Hubly further remarked that Bryan “got kids to lie.”

¶ 15    The trial court found Hubly guilty of two counts of battery regarding his conduct with Polk and Dombrowski, and four counts of unlawful delivery of alcohol to a minor regarding his conduct with Polk, Dombrowski, Bryan, and Murphy. The court found that “the testimony of the students was essentially credible, and that the testimony of [Hubly] was less so.” The court stated that although Hubly “suggested a type of ‘conspiracy’ against him, [it] was presented with no credible evidence of any concerted effort to fabricate or tell untruths.” In finding that Hubly had committed battery, the court noted that Polk and Dombrowski had “a type of mentor relationship” with Hubly while they attended college, and that they “did not believe that the nature of their relationship with [Hubly] had changed to a romantic or even potentially romantic one, nor did they give their consent to such a change.” Although the court found the State’s evidence sufficient to prove unlawful delivery of alcohol to a minor regarding Hubly’s conduct with Polk, Dombrowski, Bryan, and Murphy, the court found “problems” with the State’s presentation of evidence concerning Anderson, and therefore acquitted him of that charge.

¶ 16    Following Hubly’s convictions, the court held a sentencing hearing. At the hearing, Crystal Lake Police Department Detective David Eitel, who investigated the allegations against Hubly, testified regarding the investigation and what numerous students had told him. According to Eitel, Dombrowski said that when Hubly was her teacher, he made comments about students becoming friends with him on social media after graduation. Dombrowski said it was “the cool thing” to be friends with Hubly and go to his home after graduation. Dombrowski also said that after she developed a personal relationship with Hubly, they would talk to each other about their sexual

experiences. Bryan told Eitel that he and his friends were uncomfortable when Hubly tried to be more of a counselor than their teacher. Bryan said that when he was in high school, Hubly wanted him to stay after school to talk about issues relating to Bryan's family and girlfriend. Bryan also said that Hubly had told Bryan that Bryan was gay and "needed to be who he was," but Bryan denied being gay and said he felt "exploited." Anderson told Eitel that she had been to Hubly's home with friends after she had graduated, that the gatherings were "mostly harmless," and that Hubly had provided alcohol. Anderson said that she sometimes felt uncomfortable around Hubly, and described an incident in which Hubly was intoxicated and went "around asking girls including [Anderson] if he could take a shot out [*sic*] of their tits." Anderson also said that Hubly "constantly" asked her about her sex life and would share details with her about his own sex life including the different people with whom he had had sex and the places it had occurred. Another former student of Crystal Lake Central High School, identified in the record only as M.D., told Eitel that she thought Hubly "took advantage of his position of power and preyed on the vulnerable students at school." M.D. added that Hubly was "drawn to kids with a bad home life." M.D. also told Eitel that Hubly asked her about her brother being gay.

¶ 17    At the sentencing hearing, Hubly spoke in allocution. He apologized to his students for his abrupt resignation, to his colleagues, and to Dombrowski and her family. He also apologized "to the community for [his] poor decision-making," and expressed "hope that everyone can accept [his] apology and [his] commitment to do better." He submitted 18 letters in support of his character and teaching career, primarily from former students and current and former teachers.

¶ 18    The trial court sentenced Hubly to conditional discharge on the battery convictions and to court supervision on the unlawful-delivery-of-alcohol-to-a-minor convictions. The court also ordered Hubly to undergo a sex evaluation as part of his sentence on the battery convictions. The

court explained that Hubly appeared to be "a great music teacher and a great theater director," and the court believed he deserved a second chance, but that "school boards and others who may hire him in the future should be aware that he is getting a second chance." The court found that Hubly was not entitled to a sentence of supervision on the battery counts because it could not find "that it would be in the public's best interest or in a school board's best interest or school district's best interest to be unaware that [Hubly] is being given a second chance."

¶ 19    Hubly filed a motion to reconsider sentence. At the hearing on that motion, Hubly argued that the court should have imposed a sentence of supervision on the battery convictions. The court denied the motion. The court explained that, under the supervision statute (730 ILCS 5/5-6-1(c) (West 2016)), it had to consider whether the public would be best served by Hubly receiving only supervision, such that he would not have a criminal record. The court concluded that not having a record of the crimes would not be in the public's best interest and that "the public [would be] best served if whatever [school] district hires him in the future knows that [he is getting] a second chance."

¶ 20    Hubly appealed to this court, challenging, *inter alia*, the sufficiency of the evidence supporting his two battery convictions and his conviction of providing alcohol to Polk. We affirmed his convictions. *People v. Hubly*, 2019 IL App (2d) 180619-U. In our disposition, we noted that the evidence against Hubly with respect to Polk presented "a classic 'he said, she said' case." *Hubly*, 2019 IL App (2d) 180619-U, ¶ 62. We concluded that the trial court, which was charged with evaluating the credibility of the witnesses and assessing any flaws in their testimony, reasonably credited Polk's testimony over that of Hubly. *Hubly*, 2019 IL App (2d) 180619-U, ¶¶ 62-64. We further noted that "[t]he evidence supported the trial court's conclusion that [Hubly] was a mentor and a close friend to [Dombrowski] rather than a prospective romantic partner," and

that "[e]ven if [Hubly] could have reasonably construed their get-together as a date, the evidence *** did not support [Hubly's] argument that he merely made '[a] reasonable romantic physical advance.' " *Hubly*, 2019 IL App (2d) 180619-U, ¶ 76. We explained that Hubly "did not simply go in for a first kiss," but " 'forced his tongue' " into Dombrowski's mouth in " 'a very aggressive way,' " "rubbed her thighs and stomach, and put his hand up her shirt and attempted to grab her breast." *Hubly*, 2019 IL App (2d) 180619-U, ¶ 76. Additionally, we commented that Hubly had kissed Dombrowski a second time after she had "rebuffed" him by "squirm[ing] away," and then attempted a third kiss as she left his home. *Hubly*, 2019 IL App (2d) 180619-U, ¶ 77.

¶ 21 After the stipulation of facts, joint exhibits, and other exhibits had been admitted into evidence, the hearing officer heard opening statements. The Superintendent requested the revocation of Hubly's professional educator license on the basis that Hubly "exhibited a lack of professional judgment by inviting underage former students to his home on multiple occasions[,] *** provid[ing] alcohol to [them], *** [and] inappropriately touch[ing] two former female students without their consent." The Superintendent acknowledged Hubly's lengthy career as a teacher, but argued that Hubly's conduct "outweighed the years of service he provided to the School District." Hubly requested a one-year suspension of his professional educator license. Hubly stated that although his behavior "was indeed inappropriate, especially with [Dombrowski]," he disagreed with many of the trial and appellate courts' decisions, including that his actions rose to the level of battery. He also emphasized that none of the victims had been current students, and while they were under 21 years of age, they were all adults. In closing argument, Hubly reiterated that "[e]veryone was an adult in this case." He stated that "nobody was lured by [him]" and nobody was "prodded along." He denied providing alcohol to the former students. He stated that he hoped the hearing officer would "take the time to read [the trial court's]

statements regarding the case," because of the court's specific finding that he "should receive a second chance." Hubly concluded by acknowledging again that he had committed "inappropriate behavior" and offering a "commitment to do better."

¶ 22    After closing arguments, the hearing officer admitted the Superintendent's rebuttal exhibits.[1] Hubly objected to the admission of the Superintendent's rebuttal exhibit No. 1, which was a letter of reprimand he received in 2006 regarding inappropriate communications with a 17-year-old student (2006 Reprimand Letter). Hubly argued that the 2006 Reprimand Letter was not relevant to the proceedings because it was not included in the statement of charges. The hearing officer noted Hubly's objection, but admitted the exhibit. The parties subsequently filed post-hearing briefs in the matter. The Superintendent argued that Hubly's "unprofessional and immoral conduct" warranted revocation of his professional educator license. Hubly argued that revocation would be inappropriate because the students were adults at the time of the events at issue. He also argued that he should be given a second chance as the trial court had indicated and that any sanction should be comparable to the sanctions imposed in other educator misconduct cases.

¶ 23    The hearing officer issued her recommended decision on August 18, 2020. She determined that the Superintendent had established by a preponderance of the evidence that Hubly's conduct on three different occasions over a 10-month period in 2015 and 2016 was unprofessional and inappropriate, violating section 21B-75(b) of the School Code (105 ILCS 5/21B-75(b) (West 2018)) and the Code of Ethics for Illinois Educators (Ethics Code) (23 Ill. Admin. Code §§ 22.20(b)(4), (d)(3), (e)(3) (2014)). Noting the trial court's efforts to balance the competing

---

[1] Although the rebuttal exhibits were admitted into evidence, they have not been included in the record submitted on appeal.

considerations of a community's right to be informed of Hubly's lapses in professional judgment with Hubly's history of positive achievements as a teacher and mentor, the hearing officer determined that a sanction of suspension would be consistent with the court's ruling while a sanction of revocation would not be. Therefore, the hearing officer recommended that Hubly receive a four-year suspension. She further indicated that because two years had passed since Hubly had been found guilty in 2018, that Hubly should receive credit for those two years, and a four-year suspension should end in July 2022.

¶ 24    The Superintendent filed an exception to the hearing officer's decision, disagreeing with the hearing officer that Hubly deserved a second chance, and requesting that the Board revoke his license. The Superintendent further argued that the hearing officer did not have authority under the School Code to reduce a suspension for "time served," pointing out that the criminal proceedings were separate and apart from the proceeding brought by the Superintendent. Hubly filed a response, arguing that the hearing officer's recommendation of suspension was appropriate and should be affirmed by the Board.

¶ 25    The Board held a meeting on December 4, 2020, in which the hearing officer presented her recommended decision. When asked about the 2006 Reprimand Letter, the hearing officer stated that she found the letter to be admissible and relevant to the Board's case, but discounted the letter because it did not indicate the nature of the inappropriate conduct and the conduct had occurred 10 years prior to the events at issue.

¶ 26    During the public participation segment of the meeting and pursuant to Section 475.120(d) of Title 23 of the Illinois Administrative Code (Administrative Code) (23 Ill. Admin. Code § 475.120(d) (2013)), the parties addressed the Board. The Superintendent referenced the 2006 Reprimand Letter, stating that Hubly had already "been put on notice that he had to watch ***

how he interacted with people, and he failed to do so because he continued in this conduct." For his part, Hubly admitted that his conduct was both "unprofessional" and "inappropriate" and that "most certainly *** some kind of sanction on [his] license is appropriate." He remarked that the "odds of [him] teaching are slim," but believed the hearing officer's recommendation of suspension was an appropriate sanction and encouraged the Board to adopt that recommendation. Hubly then indicated that he would be "happy to answer any questions that [the Board] might have." One Board member noted that Hubly had let his license lapse and asked Hubly why he did not renew his license. Hubly responded that he thought it was "inappropriate" for him to renew his license during the pendency of these proceedings. Hubly also stated, "quite frankly *** if I were sitting here today and you asked me do I want to teach again, the short answer is no, I don't think I do even though I had a good teaching career and really enjoined [*sic*] the work that I did." Hubly added, however, that at a later time, he might reconsider whether to return to teaching. Hubly was also questioned as to whether he had apologized to the students involved in the events at issue. Hubly stated that he had apologized to Dombrowski, but "never will" apologize to Polk because "she [was] lying."

¶ 27    The Board's discussion of the matter followed. The Board considered whether Hubly's conduct was unprofessional, Hubly's future teaching plans, and the issue of "grooming." The Board also discussed the circumstances under which a teacher's license may be suspended during the pendency of an administrative proceeding. In addition, during the discussion, some members of the Board referenced the 2006 Reprimand Letter and whether Hubly had apologized for his conduct. Following the discussion, a majority of the Board voted to revoke Hubly's professional educator license. Of 16 total members who voted, 12 voted for revocation, two abstained, and two voted against revocation. The Board issued a final order on December 10, 2020, in which it adopted

the hearing officer's statement of facts, legal analysis, and conclusions of law. However, the Board rejected the hearing officer's recommendation of a suspension and instead revoked Hubly's professional educator license.

¶ 28    On December 22, 2020, Hubly filed *pro se* in the circuit court of McHenry County a complaint for administrative review of the Board's final order. On December 10, 2021, the circuit court entered an order affirming the Board's decision. Thereafter, Hubly filed a *pro se* notice of appeal to this court.

¶ 29                                    II. ANALYSIS

¶ 30    On appeal, Hubly challenges the Board's decision to revoke his professional educator license on various grounds. Prior to discussing Hubly's claims, we observe that Hubly does not challenge the Board's finding that the Superintendent had established by a preponderance of the evidence that his conduct violated section 21B-75(b) of the School Code (105 ILCS 5/21B-75 (West 2018)) or sections 22.20(b)(4), (d)(3), and (e)(3) of the Ethics Code (23 Ill. Admin. Code §§ 22.20(b)(4), (d)(3), (e)(3) (2014)). See 105 ILCS 5/21B-75 (West 2018) (providing that the standard of proof for any administrative hearing held pursuant to section 21B-75 of the School Code shall be by the preponderance of the evidence); see also 23 Ill. Admin. Code § 475.110(c) (2013) (same). As such, Hubly has forfeited any such challenge on appeal. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."); *In re R.S.*, 382 Ill. App. 3d 453, 464 (2008). Furthermore, Hubly acknowledges in his brief on appeal that he should be subject to some sanction. He asserts, however, that revocation of his professional educator license was improper for various reasons. Consequently, we limit our discussion on appeal to addressing the propriety of the Board's sanction of revocation.

¶ 31                              A. Abuse of Discretion

¶ 32     Initially, Hubly argues that the Board's decision to revoke his professional educator license was an abuse of discretion and unduly harsh. Hubly further posits that it was "incongruent" for the Board to accept the hearing officer's findings of fact and conclusions of law, but reject her recommendation of a suspension.

¶ 33     The Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2018)) and the rules adopted thereto govern all proceedings instituted for the judicial review of a final administrative decision of the Board. 105 ILCS 5/21B-90 (West 2018). In administrative review cases, the role of the appellate court is to review the decision of the administrative agency, not the decision of the circuit court. *Brogan v. Colatori*, 2022 IL App (2d) 220160, ¶ 26. A reviewing court defers to the administrative agency's expertise and experience in determining what sanction is appropriate to protect the public interest. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 99 (1992). As such, the sanction imposed by an administrative agency is reviewed for an abuse of discretion. *Sonntag v. Stewart*, 2015 IL App (2d) 140445, ¶ 19. Abuse of discretion is the most deferential standard of review. *Control Solutions, LLC v. Elecsys*, 2014 IL App (2d) 120251, ¶ 38. A sanction will be found to be an abuse of discretion if it is: (1) arbitrary or capricious; (2) overly harsh in view of the mitigating circumstances; or (3) unrelated to the purpose of the statute. *Sonntag*, 2015 IL App (2d) 140445, ¶ 15; *Kazmi v. Department of Financial & Professional Regulation*, 2014 IL App (1st) 130959, ¶ 21. An administrative agency's imposition of a sanction " 'commands respect and substantial deference and will stand even if the reviewing court considers another sanction to be more appropriate.' " *Sonntag*, 2015 IL App (2d) 140445, ¶ 19 (quoting *County of Cook v. Illinois Local Labor Relations Board*, 302 Ill. App. 3d 682, 692 (1998)). The mere fact that a reviewing court would consider a different sanction to be more appropriate does

not render an administrative agency's decision an abuse of discretion. See *Sonntag*, 2015 IL App (2d) 140445, ¶ 20.

¶ 34    Article 21B of the School Code sets forth the licensing requirements for educators in Illinois. 105 ILCS 5/21B-5 *et seq.* (West 2018). Those licensing provisions recognize that the education of Illinois citizens "is the single most important influence on the prosperity and success of this State." 105 ILCS 5/21B-5(a) (West 2018). To this end, the School Code grants the Superintendent, in consultation with the Board, the exclusive authority "to initiate the suspension of up to 5 calendar years or revocation of any license *** for *** immorality, *** unprofessional conduct ***, or other just cause." 105 ILCS 5/21B-75 (West 2018). Thus, revocation is clearly an available sanction. In addition, Illinois educators are governed by the Ethics Code, the purpose of which is "to set expectation for educators; guide educational practice; and inspire professional excellence in relation to federal, State, and local policies and rules, and local established collective bargaining agreements." 23 Ill. Admin. Code § 22.10(a) (2014). In accordance with these purposes, the Ethics Code establishes the core principles, values, and responsibilities that apply to all Illinois educators. 23 Ill. Admin. Code § 22.10 *et seq* (2014). Among other things, the Ethics Code charges educators with the responsibility to: (1) "[d]emonstrate a high level of professional judgment" (23 Ill. Admin. Code § 22.20(b)(4) (2014)); (2) "[d]evelop and maintain professional relationships with parents, families and communities" (23 Ill. Admin. Code § 22.20(d)(3) (2014)); and (3) "[c]omply with State and federal laws and regulations" (23 Ill. Admin. Code § 22.20(e)(3) (2014)).

¶ 35    Given the deferential standard of review applicable to our analysis and in light of the foregoing statutory and administrative provisions, we cannot say that the Board's decision to revoke Hubly's professional educator license constituted an abuse of discretion. Here, Hubly's

conduct consisted not of just a single, isolated incident of poor judgment. Rather, the evidence presented at the revocation hearing showed that, over a 10-month period in 2015 and 2016, Hubly engaged in unprofessional conduct on at least three separate occasions. During get-togethers with two former students—Polk and Dombrowski—Hubly attempted to engage in sexual activities without their consent even though he had been their teacher just a year or two prior and he was 14 or 15 years older than them. Notably, Hubly grabbed and squeezed Polk's breast under her clothing. In addition, Hubly forcefully kissed Dombrowski multiple times, forced his tongue in her mouth in an aggressive manner, rubbed her thighs and stomach, and attempted to grab her breast. Additionally, Hubly knowingly served alcohol to several former students at his house, even though they were under 21 years of age. Indeed, Bryan remarked that former students had gone to Hubly's home to drink "so many times." Moreover, Hubly took steps to hide his actions by requesting attendees at the gatherings not take pictures or videos of his home. The evidence presented at the revocation hearing also suggested that Hubly fostered relationships with the students while they were still in high school, setting the expectation that they could be friends with him following graduation. As a result of this conduct, Hubly was charged with and ultimately found guilty beyond a reasonable doubt of two counts of battery and four counts of unlawful delivery of alcohol to a minor. This court affirmed the convictions that Hubly challenged on direct appeal. *People v. Hubly*, 2019 IL App (2d) 180619-U. Although the offenses of which Hubly was convicted are classified as misdemeanors (see 720 ILCS 5/12-3(b) (West 2016) (battery); (235 ILCS 5/6-16(a) (West 2016) (unlawful delivery of alcohol to a minor)), they are violations of Illinois criminal law nonetheless and Hubly's actions constituted serious lapses in professional judgment. See 23 Ill. Admin. Code §§ 22.20(b)(4) (2014) (requiring Illinois educators to demonstrate a high level of professional judgment); 23 Ill. Admin. Code §§ 22.20(d)(3) (2014)

(requiring Illinois educators to develop and maintain professional relationships with parents, families and communities); 23 Ill. Admin. Code §§ 22.20(e)(3) (2014) (requiring Illinois educators to comply with State and federal laws and regulations).

¶ 36    We recognize that the trial court, at the sentencing hearing in the underlying criminal proceeding, stated that Hubly appeared to be "a great music teacher and a great theater director" and that he deserved a "second chance." We do not discount Hubly's achievements in the educational field. That being said, the Board could have reasonably concluded that, despite Hubly's achievements as a teacher, his lapses in professional judgment were so egregious that it would not be in the public's best interest to allow him to continue educating Illinois citizens. Moreover, given the importance of education in Illinois, as reflected by the legislature's statement in the licensing provisions of the School Code, the Board could have reasonably concluded that a sanction of revocation was necessary to deter others who are professionally licensed in the field. In short, given the deferential standard of review and the Board's experience and expertise in determining what sanction is appropriate to protect the public interest, we cannot say that the Board's determination was arbitrary or capricious, overly harsh, or unrelated to the purposes of the School Code.

¶ 37    In arguing that the sanction imposed by the Board was unduly harsh, Hubly points out that under the School Code, a professional educator license is required to be revoked when an individual's conviction of certain specified felonies is finalized. See 105 ILCS 5/21B-80 (West 2016). Hubly argues that the sanction imposed by the Board was unduly harsh because "he was convicted of two misdemeanor counts of battery that did not involve students or minors." Hubly, however, cites no authority for the proposition that revocation is not an available sanction for misdemeanor convictions. Therefore, we consider it forfeited. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1,

2020) (requiring the appellant's brief to include argument "which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on."); *Crull v. Sriratana*, 388 Ill. App. 3d 1036, 1045 (2009) ("A contention that is supported by some argument but no authority does not meet the requirements of Rule 341 and is considered forfeited."). Forfeiture aside, we reject this argument for several reasons. First, Hubly seems to ignore that, in addition to the battery convictions, he was also found guilty of four counts of unlawful delivery of alcohol to a minor. Second, the School Code provides for the revocation of a professional educator license for unprofessional conduct. 105 ILCS 5/21B-75 (West 2016). As noted above, there was ample evidence for the Board to conclude that revocation was an appropriate sanction under the circumstances present here. Third, the fact that Dombrowski and Polk were not minors and were no longer students is irrelevant. The fact remains that Hubly attempted to engage in sexual activities without their permission, they had recently graduated from high school, they looked to Hubly—their former teacher—for advice and counsel, and he was 14 or 15 years older than them. Based on this record, the Board could reasonably conclude that Hubly's conduct demonstrated a serious lack of professional judgment and warranted revocation.

¶ 38    Hubly also argues that the Board's sanction was unduly harsh because the Board failed to consider his "long history of excellence" when it decided to revoke his professional educator license. We disagree. The Board had before it all the evidence presented to the hearing officer at the revocation hearing. The Board reviewed the record as well as the hearing officer's findings of fact and conclusions of law, all of which reference Hubly's accomplishments as a teacher. See 23 Ill. Admin. Code § 475.120(c) (2013). In addition, during its discussion at the December 4, 2020, meeting, the Board expressly referenced the trial court's remarks that it believed that Hubly deserved a "second chance." Nevertheless, as noted above, the Board could have reasonably

concluded that despite Hubly's achievements as a teacher, his lapses in professional judgment were so egregious that they outweighed the years of service he provided as a teacher. We find no error on this basis.

¶ 39     In arguing that the sanction imposed by the Board was unduly harsh, Hubly also directs us to three cases involving the revocation of liquor licenses. See *Hanson v. Illinois Liquor Control Comm'n*, 201 Ill. App. 3d 974 (1990); *Soldano v. Illinois Liquor Control Comm'n*, 131 Ill. App. 3d 10 (1985); *Byrne v. Stern*, 103 Ill. App. 3d 601 (1981). In each of those three cases, the courts held that the revocation of the operator's liquor license was too severe where the operators of the establishments had never previously been charged with a license violation. *Hanson*, 201 Ill. App. 3d at 983-84; *Soldano*, 131 Ill. App. 3d at 16; *Byrne*, 103 Ill. App. 3d at 606-607. Although a court may consider sanctions imposed in similar cases, "each case must be considered on its merits ***, and it is for the [administrative agency] to determine the appropriate sanction in each case." *Siddiqui v. Department of Professional Regulation*, 307 Ill. App. 3d 753, 763 (1999). Here, the cases cited by Hubly are not similar to the facts of his case. Liquor licenses are governed by the Liquor Control Act (235 ILCS 5/1 *et seq.* (West 2020)) whereas professional educator licenses are governed by the School Code (105 ILCS 5/21B-5 *et seq.* (West 2020)). More significantly, the cases cited by Hubly involve operators of establishments who did not have a prior history of liquor license violations. In this case, Hubly was convicted of multiple offenses involving his former students for conduct that occurred over a course of approximately 10 months. Stated differently, Hubly's convictions were not the result of a single, isolated instance of poor judgment. Rather, they arose from a pattern of poor professional judgment. As such, we conclude that the cases cited by Hubly are simply not apposite.

¶ 40    As noted above, Hubly also contends that it was "incongruent" for the Board to accept the hearing officer's findings of fact and conclusions of law, but reject her recommendation of a suspension. According to Hubly, because the Board adopted the findings of fact and conclusions of law of the hearing officer, it was required to also adopt the hearing officer's recommendation that his professional educator license be suspended rather than revoked. Hubly posits that only if the Board had "modified or rejected" the hearing officer's findings would the Board "have been free to make its own decisions based on its own findings." Hubly, however, cites no authority for this proposition. Therefore, we consider it forfeited. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (requiring the appellant's brief to include argument "which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on); *Crull*, 388 Ill. App. 3d at 1045 ("A contention that is supported by some argument but no authority does not meet the requirements of Rule 341 and is considered forfeited."). Forfeiture aside, where, as here, reasonable minds may differ on the merits of the arguments presented, we will defer to the decision of the administrative agency. See *Abrahamson*, 153 Ill. 2d at 99; *Salvator v. Air & Liquid Systems Corp.*, 2017 IL App (4th) 170173, ¶ 66; *McNeil v. Ketchens*, 397 Ill. App. 3d 375, 397-98 (2010). The Board's decision to revoke Hubly's professional educator license rather than suspend it was a product of its expertise and experience in determining what sanction is appropriate to protect the public interest. *Abrahamson*, 153 Ill. 2d at 99. Under these circumstances, we defer to the Board's decision.

¶ 41                                B. Contrary to Law

¶ 42    Next, Hubly argues that the Board's decision to revoke his professional educator license failed to comply with the rules applicable to administrative cases under the Board's jurisdiction (see 23 Ill. Admin. Code § 475.10 *et seq*. (2013)) and was therefore contrary to law. Specifically,

Hubly complains that: (1) the Board considered the 2006 Reprimand Letter even though it was not included in the statement of charges as a reason to revoke his professional educator license; (2) the Board speculated that he had "groomed" his former students despite no evidence of such an offense in the record; and (3) members of the Board did not review the entire record of proceedings before voting to revoke his professional educator license. We address these claims *seriatim*. Prior to doing so, we review the relevant provisions of the Administrative Code.

¶ 43     All actions conducted under the jurisdiction of the Board are initiated when the Superintendent issues a written notice of opportunity for hearing which is served upon the licensee. 23 Ill. Admin. Code § 475.40(a) (2013). The written notice of opportunity for hearing must include a statement of charges alleged against the licensee. 23 Ill. Admin. Code § 475.40(b)(1) (2013). The statement of charges shall consist of "a short and plain statement of the material allegations asserted," "the citations of the statutes and rules that the licensee allegedly violated," and "the sanction recommended by the *** Superintendent." 23 Ill. Admin. Code § 475.40(b)(1) (2013). If a licensee receiving a notice of opportunity for hearing wishes to request a hearing, then he or she must file a written request for hearing within 10 days after receipt. 23 Ill. Admin. Code § 475.40(e) (2013).

¶ 44     If a request for hearing is received, the Superintendent notifies the secretary of the Board and requests the designation of a hearing officer. 23 Ill. Admin. Code § 475.40(f) (2013). The assigned hearing officer possesses "all powers necessary and appropriate to conduct a fair, full and impartial hearing," including the power to rule upon motions, objections, and evidentiary questions. 23 Ill. Admin. Code § 475.50(c)(9) (2013). Further, the parties "shall exchange, and provide a copy to the hearing officer of, the documents or exhibits to be used at the hearing and list of witnesses to be called at the hearing no later than 14 days prior to the hearing, or by a

deadline otherwise set by the hearing officer." 23 Ill. Admin. Code § 475.90(a) (2013). The Administrative Code also sets forth the procedures governing proceedings before the hearing officer, including the order of proceedings, matters of evidence, and the submission of written briefs. 23 Ill. Admin. Code § 475.110 (2013). Finally, Section 475.120(c) of Title 23 of the Administrative Code governs the procedures that culminate in a final order of the Board. 23 Ill. Admin. Code § 475.120(c) (2013). That provision requires that: (1) the hearing officer present his or her proposed order in person to the Board; (2) the Board review the record and the hearing officer's findings of fact, conclusions of law, and recommendations, together with any exceptions thereto and briefs in support thereof; and (3) the Board issue a final order accepting, rejecting, or modifying the hearing officer's recommendation within 30 days from the hearing officer's presentation. 23 Ill. Admin. Code § 475.120(c) (2014). In addition, parties to the hearing are permitted to be present at the hearing officer's presentation to the Board and may address the Board during any public participation segment of the Board meeting for a period of up to five minutes. 23 Ill. Admin. Code § 475.120(d) (2013).

¶ 45    The interpretation of agency rules and regulations is a question of law subject to *de novo* review. *Campbell v. Department of Children & Family Services*, 2016 IL App (2d) 150747, ¶ 17. In contrast, we review an administrative agency's decision regarding the admission of evidence for an abuse of discretion. *Danigeles v. Illinois Department of Financial & Professional Regulation*, 2015 IL App (1st) 142622, ¶ 89. Under this standard of review, the decision of an administrative agency will not be disturbed unless it is arbitrary or capricious or unless no reasonable person would agree with the agency's position. *Sonntag*, 2015 IL App (2d) 140445, ¶ 22. With these principles in mind, we turn to Hubly's assignments of error.

¶ 46                          1. 2006 Reprimand Letter

¶ 47    Hubly contends that the Board should not have considered the 2006 Reprimand Letter because it was not referenced as a reason to revoke his professional educator license in the original or amended statement of charges filed by the Superintendent. Hubly further contends that by not including the 2006 Reprimand Letter in the original or amended statement of charges, he did not receive proper due process.

¶ 48    Initially, we conclude that the admission of the 2006 Reprimand Letter did not constitute an abuse of discretion. The rules applicable to administrative cases under the Board's jurisdiction permit a party to submit rebuttal evidence. 23 Ill. Admin. Code § 475.110(e)(1) (2013). A hearing officer may exclude such evidence if it is "irrelevant, immaterial or unduly repetitious." 23 Ill. Admin. Code § 475.110(e)(1) (2013); see also 5 ILCS 100/10-40(a) (West 2020) (providing that "[i]rrelevant, immaterial, or unduly repetitious evidence shall be excluded" under the Administrative Procedure Act). In this case, the 2006 Reprimand Letter was introduced as rebuttal evidence at the revocation hearing in response to Hubly's promise of a "commitment to do better." The Superintendent offered the 2006 reprimand letter to show that Hubly had already been put on notice to watch how he interacted with students, yet he continued to exercise poor professional judgment. At the Board meeting, the hearing officer explained that although she discounted the 2006 Reprimand Letter because it did not specify the nature of the inappropriate conduct and the conduct had occurred 10 years prior to the events at issue, she admitted the document into evidence because it had some relevancy to the Board's case. Given that the 2006 Reprimand Letter was offered in rebuttal and considering the hearing officer's rationale for admitting the document, we cannot say that the decision to admit the 2006 Reprimand Letter was arbitrary or capricious or that no reasonable person would agree with the decision. *Sonntag*, 2015 IL App (2d) 140445, ¶ 22. Accordingly, we find no error in its admission.

¶ 49    The Superintendent notes that the 2006 Reprimand Letter is not contained in the record filed on appeal. Generally, it is the appellant's burden to present a sufficiently complete record of the proceedings at trial to support a claim of error. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391 (1984); *Burns v. Department of Insurance*, 2013 IL App (1st) 122449, ¶ 15. In the absence of such a record on appeal, it will be presumed that the order entered by the administrative agency was in conformity with law and had a sufficient factual basis. *Foutch*, 99 Ill. 2d at 392; *Burns*, 2013 IL App (1st) 122449, ¶ 15. Moreover, any doubts which may arise from the incompleteness of the record will be resolved against the appellant. *Foutch*, 99 Ill. 2d at 392; *Burns*, 2013 IL App (1st) 122449, ¶ 15. However, since Hubly's contention presents a legal question, *i.e.*, whether the Illinois Administrative Code allows the Board to consider a document that is included in the record but not in the statement of charges, the absence of the 2006 Reprimand Letter in the appellate record does not necessarily preclude meaningful review of the issue and we will address it.

¶ 50    Hubly correctly observes that the 2006 Reprimand Letter was not referenced in the original or amended statement of charges. However, there is a logical reason for this. As noted above, the 2006 Reprimand Letter was admitted as rebuttal evidence. As such, it was not included in either the original or amended statement of charges, which only referenced events that occurred in 2015 and 2016. Indeed, as the Superintendent cogently observes (and Hubly agrees), the event referenced in the 2006 Reprimand Letter was neither the catalyst for the revocation proceedings nor the subject of the revocation hearing. However, once the 2006 Reprimand Letter was admitted into evidence at the revocation hearing and became part of the record, the Board was obligated to review the entire record in its entirety before reaching its decision. See 23 Ill. Admin. Code § 475.120(c) (2014) (providing that upon the hearing officer's presentation of his or her proposed order to the Board, "the [Board] shall review the record and the hearing officer's findings of fact,

conclusions of law, and recommendations, together with any exceptions thereto and briefs in support thereof, and shall *** issue a final order *** accepting, rejecting or modifying the hearing officer's recommendation"). In short, the Board's action of reviewing the record, which included the 2006 Reprimand Letter, was permitted by Section 475.120(c) of Title 23 of the Administrative Code (23 Ill. Admin. Code § 475.120(c) (2014)), and therefore was not contrary to law.

¶ 51    Additionally, contrary to Hubly's assertion, the Board's consideration of the 2006 Reprimand Letter did not constitute a violation of due process. Administrative proceedings are governed by the fundamental principles and requirements of due process of law. *Abrahamson*, 153 Ill. 2d at 92. Our supreme court has stated that due process is a flexible concept and requires only such procedural protections as fundamental principles of justice and the particular situation demand. *Abrahamson*, 153 Ill. 2d at 92. Our supreme court has also commented that procedural due process in an administrative proceeding does not require a proceeding in the nature of a judicial proceeding. *Abrahamson*, 153 Ill. 2d at 93. A fair hearing before an administrative agency includes the opportunity to be heard, the right to cross-examine adverse witnesses, and impartiality in ruling upon the evidence. *Abrahamson*, 153 Ill. 2d at 95. A court will find a due process violation only if prejudice is shown. *Gonzalez v. Pollution Control Board*, 2011 IL App (1st) 093021, ¶ 42. A claim that an administrative proceeding violated an individual's right to due process presents a question of law and, therefore, is subject to *de novo* review. *MIFAB, Inc. v. Illinois Human Rights Comm'n*, 2020 IL App (1st) 181098, ¶ 81.

¶ 52    In this case, Hubly had notice of the charges against him as provided in section 475.40 of the rules applicable to administrative cases under the Board's jurisdiction. 23 Ill. Admin. Code § 475.40 (2013). Those charges included his conduct with respect to Polk, Dombrowski, Bryan, and Murphy in 2015 and 2016. Those events were the focus of the revocation hearing. Moreover,

Hubly made an opening statement and a closing argument. He stipulated to the entry of the transcript from his criminal trial in lieu of calling witnesses at the revocation hearing. Further, he had the right to cross-examine the witnesses at the criminal proceeding and did so. Additionally, Hubly had an opportunity to make comments before the Board at the December 4, 2020, meeting, and he advocated for suspension of his professional educator license instead of revocation. In light of the foregoing, we concluded that Hubly received all the process that he was due.

¶ 53    Nevertheless, Hubly claims that he was prejudiced by the Board's references to the 2006 Reprimand Letter because he was unable to refute the allegation of misconduct in the letter. Hubly's argument fails to recognize that the 2006 Reprimand Letter was not introduced as substantive evidence, but rather as rebuttal evidence following his "commitment to do better" during closing argument at the revocation hearing. Whatever conduct led to the issuance of the 2006 Reprimand Letter, it was not part of the charges at issue. Furthermore, the fact that the 2006 Reprimand Letter reflected negatively upon Hubly is different from establishing prejudice to substantiate a due process violation. Again, the record establishes that Hubly received all the process that was due where he received notice of the charges against him, stipulated to the admission of the testimony from the criminal trial, made an opening statement and closing argument at the revocation hearing, and spoke at the Board's December 4, 2020, meeting.

¶ 54    Hubly also directs us to *Lyon v. Department of Children & Family Services*, 209 Ill. 2d 264 (2004), in support of his due process argument, but his reliance on that case is misplaced. In *Lyon*, the supreme court was concerned with the reasonableness of delays in the administrative appeals process given the burden of proof required to sustain an indicated report of child abuse. The court ultimately concluded that when the lower standard of proof of credible evidence was used for an indicated report rather than the higher standard of preponderance of the evidence, the Department

of Children and Family Services would have to comply with the statutory and regulatory deadlines to afford procedural due process. *Lyon*, 209 Ill. 2d at 283-84. In this case, there was no delay in the administrative appeals process and no question as to any burden of proof. *Lyon*, therefore, does not provide persuasive authority for Hubly's due process argument.

¶ 55                                    2. Grooming

¶ 56     Next, Hubly argues that the Board's decision to revoke his professional educator license was contrary to law because the Board speculated that he had "groomed" his former students when they were in school, despite no evidence of such an offense in the record. In support of his position, Hubly asserts that the offense of "grooming" as defined in section 11-25 of the Criminal Code of 2012 (Criminal Code) (720 ILCS 5/11-25 (West 2020)) means "a crime in which a person uses an electronic device or other technology to lure a child under the age of 17 and to commit a sex crime against the child." Hubly then highlights the testimony of two Board members who remarked that there was "some evidence of grooming" and that "some type of grooming" had occurred based on the fact that students, having graduated only a year prior, were getting together with a former teacher at his home and being served alcohol. Hubly asserts, however, that he was never accused or criminally charged with the offence of "grooming" (see 720 ILCS 5/11-25 (West 2020) (defining the offense of "grooming")), he was not alleged to have committed the offense of "grooming" in the statement of charges issued by the Superintendent, and there was no evidence in the record of any unprofessional behavior or misconduct with any person under the age of 17. According to Hubly, the Board only had the authority to "accept, reject or modify" the hearing officer's decision (23 Ill. Admin. Code § 475.120(c) (2013)) and was without authority to speculate or otherwise add to the record. As such, Hubly contends that the Board "considered *** baseless speculation" of grooming as a reason to revoke his professional educator license.

¶ 57    Hubly's argument is based on a misinterpretation of the record. Section 11-25(a) of the Criminal Code defines the offense of "grooming" in pertinent part as follows:

"A person commits grooming when he or she knowingly uses a computer on-line service, Internet service, local bulletin board service, or any other device capable of electronic data storage or transmission, performs an act in person or by conduct through a third party, or uses written communication to seduce, solicit, lure, or entice, or attempt to seduce, solicit, lure, or entice, a child, a child's guardian, or another person believed by the person to be a child or a child's guardian, to commit any sex offense as defined in Section 2 of the Sex Offender Registration Act [(730 ILCS 150/2 (West 2020))], to distribute photographs depicting the sex organs of the child, or to otherwise engage in any unlawful sexual conduct with a child or another person believed by the person to be a child." 720 ILCS 5/11-25(a) (West 2020).

For purposes of the "grooming" statute, a "child" means a person under 17 years of age. 720 ILCS 5/11-25(a) (West 2020). Contrary to Hubly's argument, none of the Board members accused him of "grooming" as that offense is defined in section 11-25(a) of the Criminal Code (720 ILCS 5/11-25(a) (West 2020)). Rather, the Board members to whom Hubly refers were merely expressing their concern that Hubly had set the expectations with his students, while they were still students, that after graduation they could spend time with him at his home and consume alcohol. The Board members' statements and concerns are supported by the record.

¶ 58    In this regard, we note that Detective Eitel testified at the sentencing hearing that according to Dombrowski, Hubly had made comments about students becoming friends with him on social media after graduation and that it was the "cool thing" to be friends with Hubly and go to his home after graduation. At Hubly's criminal trial, several students testified that they went to Hubly's

home and were served alcohol by him. Eitel's testimony and the testimony of the students were part of the record submitted to the Board. As noted above, the Board is required to review the record. 23 Ill. Admin. Code § 475.120(c) (2013). This necessarily entails discussing the evidence. Indeed, there is nothing in the rules applicable to administrative cases under the Board's jurisdiction that precludes members of the Board from engaging in discussions and sharing their viewpoints before reaching a decision. The fact that the Board has the authority to "accept, reject or modify" the hearing officer's recommendation in no way implies that the Board members are without authority to discuss the evidence. Accordingly, we conclude that the Board's discussion of the evidence and its members' comments about "grooming" were not contrary to law.

¶ 59                                    3. Record Review

¶ 60    Next, Hubly argues that the Board's decision to revoke his professional educator license violated the rules applicable to administrative cases under the Board's jurisdiction because Spencer Saal, one of the Board members who voted to revoke his professional educator license, "admitted he did not review the record as required." See 23 Ill. Admin. Code § 475.120(c) (2013) (requiring the Board to review the record). Hubly further argues that there is evidence that other members of the Board did not review the record. In this regard, Hubly posits that "[i]t can only be assumed" that two other Board members, Jacob Carlson and Sophia Gehlhausen-Anderson, did not review the record because they "speculated that Hubly committed the offense of [g]rooming without any evidence on the record supporting such a claim."

¶ 61    The record shows that prior to the December 4, 2020, Board meeting, members were sent various documents from Hubly's case, including, but not limited to, the statement of charges, the transcript of the underlying hearing, evidence provided at the hearing, the parties' briefs, the findings and recommendations of the hearing officer, and any exceptions filed by the parties. The

Board members were also sent a memorandum informing them that the documents from Hubly's case "should be reviewed by [Board] members prior to the December 4 meeting at which [they] will be asked to make a final decision on the recommendations of the hearing officer." The memorandum further advised that "there are a considerable number of pages of documents to review on this legal case prior to the hearing (609 total pages). This number is not typical for most educator misconduct cases." During the Board's December 4, 2020, meeting, Saal stated, "I didn't read all 600 pages. I was not able to." Hubly argues that because Saal did not "review the record," the revocation of his professional educator license was contrary to law and must be reversed. We disagree.

¶ 62    The rule which Hubly references provides in relevant part that "the [Board] shall review the record and the hearing officer's findings of fact, conclusions of law, and recommendations, together with any exceptions thereto and briefs in support thereof." 23 Ill. Admin. Code § 475.120(c) (2013). As noted above, Saal stated that he "didn't *read* all 600 pages [of the record]. I was not able to." (Emphasis added.) Saal's comments do not establish that the revocation of Hubly's professional educator license was contrary to law. Notably, section 475.120(c) does not require the members of the Board to *read* every single page of the record. It simply requires the Board to "review the record." 23 Ill. Admin. Code § 475.120(c) (2013). While Saal's statement indicates that he did not "read" all 600 pages of the record, it in no way indicated that he had not "review[ed]" the record, including those parts of the record that were of relevance to Hubly's case. In any event, the comment of a single Board member is not significant where the overwhelming majority of the members were in support of revocation.

¶ 63    Regarding Carlson and Gehlhausen-Anderson, Hubly cites no evidence that they did not review the record. Instead, his argument is premised on an assumption that they did not review the

record because they "speculated" that he had engaged in the criminal offense of "grooming." We previously rejected Hubly's claim that the Board speculated that he had "groomed" his former students despite no evidence of such an offense in the record. Moreover, conjecture is not proof and is insufficient to demonstrate error. See *People v. Saunders*, 220 Ill. App. 3d 647, 670 (1991) (noting that "probability and speculation *** do not support a claim of reversible error"). As such, this argument is wholly insufficient to establish that the Board's actions were contrary to law. Lastly, we observe that Gehlhausen-Anderson did not vote, so whether she reviewed the record has no bearing on the outcome of the Board's decision.

¶ 64    In short, we are unpersuaded by Hubly's claim that the Board's decision to revoke his professional educator license failed to comply with provisions of the rules and regulations applicable to administrative cases under the Board's jurisdiction (see 23 Ill. Admin. Code § 475.10 *et seq.* (2013)) and was therefore contrary to law.

¶ 65                                C. Legal Authority

¶ 66    Next, Hubly argues that the Board exceeded its legal authority when it revoked his professional educator license because it considered information regarding his future teaching plans, whether he apologized to the Board for his actions, whether the Illinois educator system adequately protects students from unprofessional educators, and whether a school district would hire him based on his criminal convictions. Hubly maintains that consideration of this additional information was improper because the Board only had the authority to "accept, reject or modify" the hearing officer's recommendation and could not consider information outside of the hearing officer's findings of fact and conclusions of law. Having done so, Hubly insists that the Board's decision to revoke his professional educator license must be revoked. We review the question

whether the Board exceeded its authority *de novo*. *Emerald Performance Materials, LLC v. Illinois Pollution Control Board*, 2016 IL App (3d) 150526, ¶ 25.

¶ 67    At the outset, we observe that the only support Hubly cites in support of his argument is a provision of the Administrative Code (23 Ill. Admin. Code § 475.120(c) (2013)) and three cases. One of the cases Hubly cites (*Southern Illinois Asphalt Co. v. Pollution Control Board*, 60 Ill. 2d 204 (1975)) is simply for the applicable standard of review. Another case (*Dorfman v. Gerber*, 29 Ill. 2d 191 (1963)) is for the proposition that courts have reversed the decision of an administrative agency where the action of the agency "was arbitrary and capricious in revoking a license." The third case (*Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 505-06 (1988)) is for the proposition that an administrative decision is arbitrary and capricious where the agency "relies on factors which the legislature did not intend for the agency to consider." Conspicuously absent from Hubly's discussion, however, is any statute, administrative rule, case law, or other authority that supports his argument that the Board's alleged consideration of the information he references was contrary to law, constitutes factors the legislature did not intend the Board to consider, or otherwise requires reversal of the Board's decision. The rules of our supreme court require the appellant's brief to include argument "which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). A contention that is supported by some argument, but no relevant authority, does not comply with the form and content requirements of the rule pertaining to briefs and is considered forfeited. See *Crull*, 388 Ill. App. 3d at 1045. Consequently, we find this argument forfeited.

¶ 68    Forfeiture aside, we find Hubly's claims without merit. As noted above, the rules applicable to administrative cases under the jurisdiction of the Board require the hearing officer to

present his or her proposed order in person to the Board. 23 Ill. Admin. Code § 475.120(c) (2013). Upon the hearing officer's presentation of his or her proposed order to the Board, the Board "shall review the record and the hearing officer's findings of fact, conclusions of law, and recommendations, together with any exceptions thereto and briefs in support thereof, and shall *** issue a final order *** accepting, rejecting or modifying the hearing officer's recommendation." 23 Ill. Admin. Code § 475.120(c) (2013). The rules further provide that parties to the hearing "are permitted to be present at the hearing officer's presentation to the [Board] and may address the [Board] during any public participation segment of the [Board] for a period of up to five minutes." 23 Ill. Admin. Code § 475.120(d) (2013). Notably, the rules do not contain any language limiting the Board's discussion of the record prior to reaching a final decision. To the contrary, the fact that the rules require the Board to review the record is at odds with Hubly's suggestion that the Board is without authority to discuss the evidence prior to rendering a final decision. Moreover, it is counterintuitive to allow the hearing officer to present his or her proposed order to the Board and a party to address the Board, but then prohibit the Board from discussing the hearing officer's or the parties' remarks. See *Perez v. Illinois Department of Children & Family Services*, 384 Ill. App. 3d 770, 775 (2008) (recognizing that administrative rules should not be interpreted so as to produce absurd results); *Modine Manufacturing, Co. v. Pollution Control Board*, 40 Ill. App. 3d 498, 502 (1976) (noting that an administrative agency has the power to construe its rules and regulation to avoid absurd or unfair results). Quite simply, there is no support in the rules applicable to administrative cases under the jurisdiction of the Board to support the notion that the Board is limited to considering only the hearing officer's findings of fact and conclusions of law. Consequently, we conclude that Hubly's future teaching plans, whether he apologized to the Board for his actions, whether the Illinois educator system adequately protects students from

unprofessional educators, and whether a school district would hire him based on his criminal convictions were relevant and appropriate for the Board to discuss in rendering its sanction decision. Because the Board complied with section 475.120 and did not exceed its legal authority in discussing this additional information, we find no error.

¶ 69                                    III. CONCLUSION

¶ 70    For the reasons stated, we affirm the judgment of the circuit court of McHenry County, which affirmed the final administrative order of the Board.

¶ 71    Affirmed.